354 So.2d 626 (1977)
Albert ROBERTSON, Individually and on Behalf of his minor children, Mary Martha Robertson, et al., and Katherine Robertson Dillon, et al., Plaintiffs and Appellees,
v.
Inetha HANDY, James Handy, Ben W. Gaylen, William L. Byrd Trucking Co., Employers Mutual Liability Ins. Co. of Wisconsin, Louisiana Department of Highways, Willie H. Jenkins and the City of Bogalusa, Defendants,
O. D. Turnage and Continental Insurance Company, Third Party Defendants,
Louisiana Department of Highways, Appellants.
No. 11729.
Court of Appeal of Louisiana, First Circuit.
December 28, 1977.
Rehearing Denied February 13, 1978.
Writ Refused March 27, 1978.
*627 France W. Watts, III, of Watts & Cassidy, Franklinton, for plaintiffs and appellees.
Ron S. Macaluso, Hammond, for Louisiana Dept. of Highways.
Louis M. Kiefer, Jr., and R. L. Ronzello, New Orleans, for Employers Mutual Liability Ins. Co. of Wisconsin, William L. Byrd Trucking Co., and Ben W. Gaylen.
Donald M. Fendlason, Dale E. Branch, of Seal, Lee, Branch & Brown, Bogalusa, for the City of Bogalusa.
Charles W. Schmidt, III, of Christovich & Kearney, New Orleans, for Continental Ins. Co. and Q. D. Turnage.
G. Wayne Kuhn, of Johnson & Kuhn, Franklinton, for Q. D. Turnage, Individually.
Before LANDRY, SARTAIN and ELLIS, JJ.
ELLIS, Judge.
This is a suit for damages for the wrongful death of Mary Lee Robertson. Plaintiffs are the husband and 13 children of the decedent. Named as defendants in the original petition were Inetha Handy, operator of the vehicle in which Mrs. Robertson was a guest passenger; James Handy, her husband; Ben W. Gaylen, operator of the tractor-trailer rig involved in the accident; William L. Byrd Trucking Company, owner of the rig; Employers Mutual Liability Insurance Company of Wisconsin, liability insurer of Gaylen and Byrd; the City of Bogalusa; and Willie H. Jenkins, alleged to be the owner of the vehicle operated by Mrs. Handy.
An answer was filed by Employers, which third partied Mr. and Mrs. Handy, the State, and the City. An answer was filed by the State to both the main demand, and Employers' third party demand. In addition *628 the State filed a third party demand against the City of Bogalusa.
The City then filed answers to the main demand, and both third party demands against it, and third partied all of the other defendants. The City also named Q. D. Turnage and Continental Insurance Company as additional third party defendants, but these two parties were subsequently dismissed from the suit.
The record does not reveal that issue was ever joined as to Mr. Handy, Mr. Jenkins, Mr. Gaylen or Byrd, no pleadings having been filed by them or on their behalf to any of the demands made against them, and no preliminary judgment of default appearing in the minutes.
After trial on the merits, judgment was rendered in favor of plaintiffs and against the State of Louisiana, through the Department of Highways, for a total of $195,000.00, being $40,000.00 for the surviving spouse, $15,000.00 for each of the five minor children, and $10,000.00 for each of the eight major children. All other demands were dismissed.
From this judgment, the State has appealed. Plaintiffs have answered the appeal, asking that the City of Bogalusa be cast solidarily with the State; that the award of damages be increased; and that Gaylen, Byrd, and Employers be found solidarily liable with the State and the City. The City has answered the appeal, asking that its third party demand be recognized should it be cast in judgment. An answer to the appeal was also filed on behalf of Gaylen, Byrd and Employers, asking for recognition of Employers' third party demands in the event they should be cast in judgment.
Since plaintiffs did not appeal, their answer to the State's appeal cannot have the effect of placing at issue the judgment below as it applies to the other defendants. Code of Civil Procedure, Article 2133. It is, therefore, not necessary that we consider the third party demands of Employers or the City, both of which are predicated on liability on the main demand.
The only question before us, therefore, is the liability of the State on the main demand, the liability of the City on the State's third party demand against it, and the question of the inadequacy of the award raised by the plaintiffs' answer to the State's appeal.
The accident happened at the intersection of Sunset Drive which is Louisiana State Highway 10, and Homochitto Street, within the limits of the City of Bogalusa. Highway 10 is a hard surface, concrete road, 18 feet in width, with gravel shoulders. In the vicinity of the accident, Highway 10 runs east and west. Immediately adjacent to the paved surface of the road, on the south shoulder, was a rut about four inches in depth and 30 to 50 feet long.
Mr. Gaylen, operating the Byrd tractor-trailer rig, was leaving Bogalusa, heading in a westerly direction on Highway 10. His rig was seven feet, 11 inches in width. Mrs. Handy, operating an automobile with Mrs. Robertson, Mrs. Eulice Pigott and Mrs. Aline Lee as guest passengers, was coming into Bogalusa, heading in an easterly direction on Highway 10. It was raining, the surface of the highway was wet, and the rut was filled with water to the level of the road surface.
Mrs. Handy testified that, as she approached the Byrd truck, it appeared to be slightly in her lane of traffic and she pulled to the right to avoid the truck. As she did so, her wheels went into the rut on the side of the road. Water from the rut splashed onto her windshield, and she lost control of her vehicle, which skidded across the highway and struck the oncoming truck broadside. As a result of the collision, Mrs. Robertson lost her life.
Mr. Gaylen testified that he was entirely within his lane of traffic, driving at 25 or 30 miles per hour, when he saw the right wheels of the Handy vehicle fall off onto the shoulder of the highway, and water splash onto its windshield. He testified that the car continued on the shoulder for about 20 feet, and then came across the road in front of him. He applied his brakes and cut slightly to his right, but was unable to avoid the collision.
*629 The investigating officers determined, from the physical evidence at the scene, that the automobile left the highway 69 feet from the point of impact, remained on the shoulder for about 22 feet and then skidded across the highway and struck the tractor at a point about four feet into the westbound lane.
An eye witness, who was driving immediately behind Mrs. Handy, testified that the tractor-trailer was entirely in its lane of traffic prior to the accident. He saw Mrs. Handy leave the highway, and saw water splash onto her windshield, and witnessed the collision.
From the foregoing testimony, and other testimony, the trial judge found no negligence on the part of Mr. Gaylen, and we find that conclusion to be fully supported by the record. He made no finding relative to the negligence of Mrs. Handy in leaving the highway when there was no apparent reason to do so. We find, on the basis of the trial judge's determination that Mr. Gaylen was entirely in his own lane of traffic, that it was negligence for Mrs. Handy to drive off the traveled portion of the highway. There is, however, no basis for imputing her negligence to Mrs. Robertson, and there is nothing in the record to indicate any contributory negligence or assumption of risk on Mrs. Robertson's part.
We are, therefore, faced with the question of the liability of the State and the City, if any, resulting from the condition of the shoulder of the road. It is the contention of the State that the condition of the shoulder was not hazardous to a reasonably prudent driver; that there was no notice, actual or constructive, of the defect to either the State or the City; and that there was no causal connection between the condition of the shoulder and the death of Mrs. Robertson.
The Department of Highways has the basic responsibility for the maintenance of State highways, including the shoulders thereof. R.S. 48:1(11) and (13); R.S. 48:21; R.S. 48:191; Willis v. State ex rel. Louisiana Dept. of Highways, 321 So.2d 819 (La.App. 1 Cir. 1975).
The State is required to maintain its highways in a reasonably safe condition. It is not the insurer of the safety of those using the highway, but it cannot knowingly allow a condition to exist which is hazardous to a reasonably prudent operator of a motor vehicle. Dupre v. Louiaiana Department of Highways, 154 So.2d 579 (La.App. 3rd Cir. 1963). Whether or not a condition is of such a hazardous nature as to render the State liable depends on the circumstances of the case.
The only evidence in the case which bears on the hazardous nature of the rut was that of Mrs. Handy, who testified that it caused her vehicle to go out of control; and that of Elmo Randolph, an expert in accident reconstruction, who testified that the rut was a contributing cause of the accident. The trial judge must have concluded that, despite Mrs. Handy's negligence in leaving the traveled surface of the highway, she would not have lost control of her car had it not been for the rut. We find no manifest error in his conclusion that the rut constituted a hazard to a reasonably prudent driver.
Witnesses for both the State and the City testified that Highway 10 was a narrow highway, which carried a relatively high volume of large truck traffic. They testified that the ruts were caused by the outer wheels of the trucks extending onto the shoulder of the road when the trucks were operated at the extreme right of the lanes. It was also stated that the rain could also cause the ruts to develop. These conditions necessitated that the shoulders be worked two or three times per month to be maintained in proper condition.
The State inspected the shoulders regularly twice a year, and the City had no inspection procedures at all, although both of them were aware of the problem, and knew that a repair of the shoulder could break down in as short a time as a week. One City employee testified that the shoulders were worked three or four times per year. It was also stated that any deficiencies *630 noted by the State in its semi-annual inspections would generally be corrected within two or three weeks of receipt of the notice thereof. The last inspection of Highway 10 was made on August 15, 1973, two and one half months before the accident. Under the foregoing circumstances we think that both the State and the City must be held to notice of the existence of the hazardous condition.
We therefore hold that the plaintiffs have met the burden of proof required by them by law, and that the State is liable for the wrongful death of Mrs. Mary Lee Robertson.
The State, however, contends that it is relieved of liability, or, alternatively, should have judgment on its third party demand against the City under a maintenance contract between them.
R.S. 48:193(A) provides, in part:
"A. The board of highways is hereby directed to repair and to keep in operating condition at its sole cost and expense, all municipal roads or streets which form a continuation of one of said highways, provided however, the final decision as to the designation or location of the particular municipal road or streets to be placed in the state system shall be left entirely up to the board of highways. At the request of the governing authority of a municipality the work may be contracted out to such municipality, but all such maintenance costs shall be paid for by the state, provided that the state shall not be responsible for the maintenance of sewers, street lighting, gas and water mains and other public utilities."
Substantially the same provision is found in R.S. 48:261.
Under the provisions of these statutes, the State entered into a maintenance contract with the City, containing, inter alia, the following provisions:
"ARTICLE II. The Department shall repair and maintain the surfacing of said roads and streets for the full width thereof, including median openings and intersections. The Department shall place all traffic stripes and markings, except parking stalls, and shall erect and maintain all traffic signs, exclusive of signs indicating street names and informational signs."
"ARTICLE IV. The municipality shall cut or otherwise control weeds, grass, trees, and other vegetation, flush and clean drainage facilities, maintain and operate traffic signals, sweep and clean the roads and streets and be responsible for the general policing and maintenance of all facilities within the designated, dedicated or apparent right of way not otherwise provided for herein, and will not in the future permit encroachments on the rights of way of said roads and streets."
"ARTICLE VII. If, in the opinion of the Department's District Engineer, the Municipality has failed to properly fulfill its obligation with respect to any and/or all roads or streets provided for by this agreement, and after the municipality has been notified in writing and given adequate opportunity to correct the condition, he may order the Department's maintenance forces to perform such work as, in his opinion, is necessary for the proper maintenance of the roads and/or streets and the Department may deduct the cost thereof from any monies due or to become due the Municipality. The Department's District Engineer shall be the sole judge of the maintenance needs and requirements of any particular road or street and as to whether or not the Municipality is fulfilling its obligation.
"ARTICLE VIII. It is understood and agreed that the municipality shall hold Department harmless for any and all claims for damages to person or property arising by reason of any negligence attributed to failure of proper maintenance of any of the facilities assumed by said municipality and likewise Department shall hold said municipality harmless of any and all such claims arising by reason of its undertakings herein."
The City, on the other hand, argues that the "surface" of the highway includes the shoulders as well as the traveled portion of the highway, and that, under the contract, the State is responsible for maintenance *631 thereof. It therefore denies liability under the third party demand.
We understand R.S. 48:193(A) and 261 to authorize the State to contract with a municipality to perform maintenance on State highways within its corporate limits. However, these statutes do not relieve the State of its fundamental responsibility that the maintenance work be properly performed.
On the other hand, the evidence in the case makes it clear that both the State and the City understood the maintenance contract to require the City to maintain the shoulders. The City employees who testified were unanimous in stating that shoulder maintenance was done by the City. It is true that on one occasion, State employees had worked the shoulders, and that, from time to time, State crews working on the traveled portion of the highway would use excess asphalt to fill ruts along the edge of the pavement. However, this does not change the fact that the City had accepted and carried out the responsibility for maintaining the shoulders of Highway 10. Although the contract may be susceptible of the interpretation urged by the City herein, the conduct of both parties during the existence of the contract makes it clear that they intended that the shoulders be maintained by the City.
It follows that, if the State is liable on the main demand, the City must be liable on the third party demand against it under the hold harmless agreement contained in the maintenance contract.
In their answer to the appeal, plaintiffs claim that the amounts awarded them were inadequate. We find those amounts, although high, to be within the discretion accorded trial judges in such cases, and certainly not inadequate.
The judgment appealed from is therefore amended so as to give judgment in favor of the State of Louisiana, through the Department of Highways, on its third party demand against the City of Bogalusa, for the full amount for which it has been found liable to plaintiffs, and, as amended, it is affirmed. All costs of this appeal shall be borne by the City of Bogalusa to the full extent permitted by law.
AMENDED AND AFFIRMED.