367 So.2d 137 (1979)
Beverly F. BRANDON, Individually and as tutrix for minors, Jonathan Dustin Brandon and Jerry Lee Brandon, et al., Plaintiffs-Appellees,
v.
STATE of Louisiana, Through DEPARTMENT OF HIGHWAYS, et al., Defendant-Appellant.
No. 13748.
Court of Appeal of Louisiana, Second Circuit.
January 16, 1979.
Writ Refused March 16, 1979.
*139 Kitchens, Benton, Kitchens, Pearce & Elkins by John B. Benton, Jr., Minden, for plaintiffs-appellees.
Philip K. Jones, Marchall W. Wroten, Robert J. Jones, Doran & Kivett by William J. Doran, Jr., Sp. Asst. to Gen. Counsel La. Dept. of Transp. and Dev., Baton Rouge, for defendant-appellant.
Before BOLIN, PRICE and HALL, JJ.
HALL, Judge.
The State of Louisiana, Department of Transportation and Development, formerly the Department of Highways, appeals from a judgment for damages rendered against it in favor of plaintiffs for injuries sustained by three passengers and the death of one passenger who were riding in a vehicle which turned over after running off the paved portion of a state highway onto a low shoulder which had not been brought up to grade after the highway was overlaid. For the reasons expressed in the trial court's excellent and well-reasoned written reasons for judgment and for the reasons expressed in this opinion, the judgment is affirmed.
This case arises out of a one vehicle accident which occurred on Highway 157 approximately three miles west of Springhill in Bossier Parish in the late afternoon of July 11, 1975. The vehicle involved in the accident was a 1969 Ford Bronco owned and being driven at the time of the accident by Dayton Rodgers. Passengers in the Bronco were Jerry Lee Brandon, James S. Felknor, William D. Curry and Robert S. Felknor.
The modified 1969 Ford Bronco was towing a fishing boat on a trailer. The accident occurred when the Bronco left the paved portion of the highway, ran off the shoulder to the right and turned over. The paved surface of the asphalt highway had been overlaid some five months previously, *140 but the shoulders had not been brought up to the level of the roadway and there was a drop-off of several inches. There were some construction signs and low shoulder signs in the area. The driver was familiar with the highway and was aware that the shoulders were low throughout the seven mile length of the highway that had been overlaid. The posted legal speed limit on the highway was 55 miles per hour, but there was at least one 45 miles per hour advisory speed sign in the area.
Rodgers was driving in an easterly direction at a speed of 45 to 55 miles per hour. He was engaged in conversation with the passengers about fish baits and immediately prior to the accident took one hand off of the wheel as if reaching for a bait. At this time the vehicle veered from the paved portion of the highway onto the shoulder to the right. The driver made an effort to bring the vehicle back onto the highway, but the vehicle went out of control and turned over. Rodgers and Brandon suffered fatal injuries. The other three passengers were injured.
Rodgers, Brandon and James S. Felknor had been on a fishing trip on the day of the accident, drinking beer throughout the day. A blood alcohol test performed on the driver after the accident showed a blood alcohol content of .13.
Two separate suits were filed. Plaintiffs in the suit on appeal are Beverly Felknor Brandon, widow of Jerry Lee Brandon, individually and as tutrix of their two minor children, and the other passengers in the vehicle. Named as defendants were the Department of Highways, the Bossier Parish Police Jury, and St. Paul Insurance Company, liability insurer of Rodgers. The Police Jury was dismissed from the suit on a motion for summary judgment because it had no responsibility for maintenance of the highway on which the accident occurred. Another suit was filed by Rodgers' widow on behalf of their minor child.
The Highway Department denied negligence, pled the contributory negligence of the driver and the passengers, and in the Brandon suit made a third party demand against the estate of Rodgers.
On the first day of trial St. Paul Insurance Company admitted liability and deposited its policy limits plus interest ($10,986.88) in the registry of the Court. The Highway Department dismissed its third party demand against the estate of Rodgers and St. Paul, with prejudice. Plaintiffs withdrew the money from the registry of the Court without prejudice to their rights against the Department of Highways. Plaintiffs did not release the estate of Rodgers.
After trial of the consolidated suits the district court found that Dayton Rodgers was negligent, that the Department of Highways was also negligent, and that their combined negligence was the legal cause of the accident. The court found the passengers to be free of contributory negligence. In the Rodgers case, judgment was rendered in favor of the Department, dismissing the suit. No appeal was taken in that case and it is not before this court. In the Brandon et al. case, judgment was rendered as follows: (1) in favor of Beverly Felknor Brandon, individually, for $464,209.50; (2) in favor of Beverly Felknor Brandon, as tutrix of the minor Jonathan Dustin Brandon, for $40,000.00; (3) in favor of Beverly Felknor Brandon, as tutrix of the minor Jerry Lee Brandon, for $40,000.00; (4) in favor of William Curry for $1,724.45; (5) in favor of James S. Felknor for $17,296.62 and (6) in favor of Robert S. Felknor for $22,181.31. The Department was given credit against the judgments for the amount paid by St. Paul Insurance Company.
The Highway Department sets forth six specifications of error:
(1) The court erred in failing to admit evidence of the condition of the Bronco vehicle at the time of the accident;
(2) The court misapplied the prior jurisprudence of this state regarding the duty of the Department of Highways and erred in finding that the State of Louisiana, Department of Highways was guilty of any negligence which *141 was the proximate cause of this accident and erred in failing to find that the negligence of Dayton Rodgers was the sole proximate cause of this accident;
(3) Alternatively, the court erred in failing to find that the passengers in the vehicle had assumed the risk or were guilty of contributory negligence;
(4) The court erred in assessing all cost against the defendant;
(5) Alternatively, the court erred in awarding an excessive amount of damages to Mrs. Beverly Brandon; and
(6) In the third alternative, the court erred in failing to reduce any judgment against the Department by one-half because of the release given by plaintiffs to the St. Paul Insurance Company.
Mrs. Brandon answered the appeal seeking an increase in the award.
Specification of Error No. 1Condition of the Bronco
After the trial of this case had been under way for several days, the Department sought to file an amended answer, pleading as an additional ground of negligence on the part of Rodgers and the passengers in the Bronco the fact that the Bronco had been "jacked up" and was difficult to drive and handle. The Department argued at the time that the condition of the Bronco had been put at issue by testimony offered by plaintiffs to the effect that the Bronco seemed to drive properly prior to the accident. The trial court did not allow the amendment for the reason that it came too late. When the defendant later tried to offer evidence as to the condition of the Bronco the trial court refused to allow the evidence, but it appears in the record under a proffer of proof. The disputed evidence consists primarily of expert testimony, based on inspections of the Bronco made some two years after the accident, to the effect that the Bronco was improperly modified and would have a tendency to sway and be difficult to handle.
The trial court did not err or abuse its discretion in refusing to allow the amendment to the answer and in refusing to admit defendant's evidence concerning the condition of the Bronco. The amendment raising a new defense after the trial was well under way came too late because the alleged facts upon which the new defense was based were readily available to defendant or could have been developed by defendant long before trial. The casual mention of the condition of the Bronco in testimony offered while plaintiffs were putting on their case did not raise a material issue as to the condition of the Bronco. The condition of the Bronco was not an issue since it had not been timely and properly raised by the defendant. In any event, the evidence which appears in the record concerning the condition of the Bronco is inconclusive and does not establish that its condition at the time of the accident was such that the driver or the passengers could be held negligent for driving or riding in the vehicle, or that the condition of the Bronco was a significant contributing factor in causing the accident. There is absolutely no evidence that any of the passengers had any reason to believe that it was not safe to ride in the vehicle. Defendant's specification of error number 1 is without merit.
Specification of Error No. 2Negligence and Liability of the Highway Department
Defendant's specification of error No. 2 presents the primary and most serious issues in this case. The Department contends that it was not negligent and that the sole cause of the accident was the negligence of the driver. The Department's contentions can be briefly summarized as follows: (1) the overlay work was done to remedy hazardous conditions in the paved surface of the highway and the five month delay in bringing the shoulders up to grade was not unreasonable because the work crews were deployed during this period of time to the best of the Department's ability and in accordance with the priorities of the various projects worked on during that period of time; (2) at the time of the accident the *142 entire project was adequately signed with construction and low shoulder signs in accordance with the Manual on Uniform Traffic Control Devices and, in any event, the driver of the vehicle was well aware of the condition of the highway; and (3) the sole cause of the accident was the negligence of the driver in driving under the influence of alcoholic beverages, in becoming inattentive and allowing the vehicle to go off the road, and in attempting to jerk the vehicle back onto the roadway.
The paved portion or the traveled portion of the roadway of Louisiana Highway 157 had become hazardous prior to January, 1975, and was in great need of overlay. A petition of the citizens of the area had been circulated and sent to the governor of the State of Louisiana and the State Department of Highways requesting improvement of the road. The Department of Highways responded to the need for overlay of the highway by electing to let contracts for the furnishing and application of the necessary hot mix materials to overlay the paved surface, with Department crews to do the necessary shoulder work. The fourteen mile section of Highway 157 between Plain Dealing, Louisiana and Springhill, Louisiana was divided into two seven mile sections, one extending from Plain Dealing to Redland and the other from Redland to Springhill. The first seven mile stretch of overlay, on which the accident happened, was done by Winford Company and the overlay was completed on or about February 17, 1975. At the beginning of construction in January, 1975, the seven mile section from Redland to Springhill was signed in accordance with the standards set forth in the Uniform Traffic Control Devices Manual. This consisted of barricade construction signs at the beginning and end of the project, advisory 45 m.p.h. speed signs, and low shoulder signs spaced a mile apart on each side of the highway. The seven mile section between Plain Dealing and Redland was overlaid by Southern Excavation and this overlay was completed July 2, 1975 only nine days before the accident occurred. The shoulders of the highway had not been brought up to a typical section or flush with the edge of the traveled portion of the roadway as of July 11, 1975, the date of the accident. There is a sharp conflict in the evidence as to what signs were in place at the time of the accident.
The hazardous condition of the highway and its shoulders, specifically the drop-off of several inches resulting from the low shoulder, created by the Highway Department, was a significant and substantial cause-in-fact of the accident. The description of the accident by the surviving passengers shows the violent action of the vehicle dropping off onto the shoulder and the difficulty encountered in the attempt to get the vehicle back onto the pavement because of the drop-off. While there may be a possibility that the Bronco would have turned over even if the drop-off had not existed, the probability is that the drop-off caused a serious accident to result from a maneuver which would otherwise have been inconsequential.
The Highway Department has a duty to maintain the highways in a reasonably safe condition for public travel. Barr v. State, Department of Highways, 355 So.2d 52 (La.App. 2nd Cir. 1978) writ den. 355 So.2d 1324 (La.1978); Petree v. Crowe, 272 So.2d 399 (La.App. 2nd Cir. 1973) writ den. 274 So.2d 709 (La.1973). Included within this duty is maintenance of the shoulders of the highway in safe condition. Robertson v. Handy, 354 So.2d 626 (La.App. 1st Cir. 1977) writ den. 356 So.2d 434 (La. 1978); Willis v. State, Dept. of Highways, 321 So.2d 819 (La.App. 1st Cir. 1975) writ den. 325 So.2d 280 (La.1976); Hopkins v. State, Dept. of Highways, 167 So.2d 441 (La.App. 1st Cir. 1964) writ den. 246 La. 885, 168 So.2d 268 (1964). More specifically as applied to this case, the Highway Department has a duty not to create a defect or hazard in the highways. Recognizing the necessity of construction work in the maintenance of highways and that hazards will often necessarily exist during the course of construction, this duty is relaxed in connection with construction activities according to the reasonable necessities of *143 the circumstances. The Department's duty during the course of construction is usually discharged by the giving of adequate warning. What constitutes adequate warning depends on the nature of the hazard to be guarded against. Von Cannon v. State, Dept. of Highways, 306 So.2d 437 (La.App. 3rd Cir. 1975) writ den. 309 So.2d 681 and 309 So.2d 682 (La.1975).
The Department has a duty to repair defects, and particularly those created by its own construction activities, within a reasonable length of time. Hale v. Aetna Casualty & Surety Co., 273 So.2d 860 (La. App. 2nd Cir. 1973) writ den. 275 So.2d 867 (La.1973). Stated another way, the Department has the duty to pursue construction to a completion within a reasonable period of time in order to eliminate the hazards created by the construction. It is a breach of that duty for the Department to undertake construction, partially complete the project, and then leave the project unfinished with hazardous conditions existing for an unreasonable period of time, particularly when it is within the capability of the Department to complete the project and eliminate the hazard.
Placing warning signs may lessen the hazard but does not correct or eliminate the hazard. Giving of warning discharges the Department's duty only during the period of time it is reasonably necessary for the hazard to exist during construction activity. Also, common experience tells us, and expert testimony in this case verifies, that warning signs left up over an extended period of time with no evidence of construction activity become ineffective, particularly as to drivers who travel the road regularly even though the drivers have actual knowledge of the hazard.
Hale v. Aetna Casualty & Surety Co., supra, involved a low shoulder hazard created by overlay work and a delay of six days in bringing the shoulder up to grade. While finding the Highway Department's contractor free of negligence under the facts of the case involving an accident arising out of a hazard created by construction activity, the court recognized the duty to perform the activity "in such a manner as not to expose those using the roads to any dangers which could be prevented by the use of ordinary and reasonable care" and to "use all reasonable precautions in repairing the road".
What constitutes a reasonable time to complete construction and to eliminate construction defects depends upon the circumstances of each case and involves consideration of factors such as the extent of the project, emergencies, availability of materials and manpower, priorities of projects, safety and economic aspects of construction, the nature and degree of the hazard created, the ability to adequately warn, and other factors.
Applying these standards, our conclusion is that the Highway Department breached its duty in this case by allowing the serious hazard created by its construction activity to exist for an unreasonable period of time. The low shoulder created a very dangerous condition, as admitted by Highway Department officials who testified. The condition was allowed to exist without attention for five months after the overlay was completed.
In support of its contention that the work was to be performed according to priorities, the Department offered into evidence its records showing where and on which project its crews were working throughout the entire five month period. It was demonstrated that some of the projects probably rated higher priority than the shoulder work involved here. But the evidence falls short of demonstrating that either economic or safety priorities made it impossible or unreasonable for the necessary crews to be assigned to the completion of this project throughout the entire five month period. As noted by the trial court, the evidence indicates that the main consideration given to assignment of the crews was a geographic progression of their work from south to north, a valid consideration but not a paramount one. Materials and manpower were available to complete the shoulder work.
*144 The Department has the responsibility for establishing priorities of projects under LSA-R.S. 48:192(A). Still, this responsibility must be reasonably exercised. It would be difficult to second-guess the Department on priorities in correcting defects not of its own making or in bringing old highways or bridges up-to-date as in Roberts v. Winston Carriers, Inc. 304 So.2d 818 (La.App. 3rd Cir. 1974) writ den. 309 So.2d 341 (La.1975) and Barr, supra. But once the Department initiates a construction project, thereby itself creating a hazardous condition, it becomes the duty of the Department to complete the construction and eliminate the hazard within a reasonable period of time, and the priorities that would excuse non-completion would have to be of high order and almost emergency proportion. Other priorities of such proportions were not shown in this case.
That good construction practice calls for the shoulders to be brought up to grade was demonstrated by the Department's own manuals and by other evidence. The maintenance manual provides that "shoulders shall be maintained smooth and flush with the edge of the surfacing." The maintenance superintendent's manual provides that "any time a shoulder is more than one inch low (or less in some cases) . . . it should be reshaped." The manual further states, "An overlay raises the pavement up. The shoulder needs to be brought up to it." and "Raising shoulders must be done after an overlay." Testimony established that when the contractor who does the overlay work is also required to do the shoulder work, which is often the case, the contract usually requires the contractor to bring the shoulder up to grade at the end of each work day. Testimony also established that shoulders can be brought up to grade on at least a temporary basis by simply grading the shoulder with a motor grader, pushing the dirt and existing material up to the grade of the paved surface. Testimony by the Department's officials also established that the overlay contract was let and the contractor given permission to proceed without any plan for the Department to do the shoulder work except sometime during the construction year. The failure of the Department to eliminate the hazardous condition for five months cannot be excused on the basis of priorities.
The duty of eliminating the hazard created by the low shoulder situation within a reasonable time encompasses the risk of injury to persons riding in vehicles which are driven off the paved surface of the highway onto the shoulder. The duty is to protect against injury arising out of the use of the shoulder for their intended purposes such as emergency exits, stopping because of motor trouble or flats, and the like; and also arising out of vehicles going onto the shoulder because of driver inattention or error. Common experience tells us that the latter is not an unusual or infrequent occurrence. Low shoulders substantially increase the risk of harm from such foreseeable activity, as it did in this case. At least as to passengers and other innocent persons, the duty to maintain the shoulders in good condition encompasses the protection of those persons from increased danger or harm resulting from driving on the shoulder because of driver inattention. There is an ease of association between the duty and the risk. For these reasons, the Department's contentions of remote cause, intervening or superceding cause, and lack of proximate cause, must fall.
In Robertson v. Handy, supra, the Highway Department was held liable for the wrongful death of a passenger in an automobile which was negligently driven off the traveled portion of the highway, hit a rut on the shoulder of which the Department had constructive notice and had failed to repair, went back on the highway, and struck an oncoming truck. In Hudson v. State, Dept. of Highways, 289 So.2d 505 (La.App. 3rd Cir. 1974) writ den. 293 So.2d 178 (La.1974), the court found that a defective curb was a contributing cause-in-fact of the accident and rejected the Department's defense that it was only a remote cause and that the accident was precipitated by the intervening negligence of one of the drivers. The "injuries suffered were of the sort expectable from the hazardous condition." *145 See also: Mixon v. Allstate Insurance Company, 300 So.2d 232 (La.App. 2nd Cir. 1974) writ den. 303 So.2d 179 (La.1974); Von Cannon v. State, Department of Highways, supra.
Summarizing, the hazard created by the Highway Department was a substantial, contributing cause-in-fact of the accident. The Department breached its duty of maintaining the highway in a reasonably safe condition by first creating and then allowing the low shoulder hazard to exist for an unreasonable period of time. The breach was not excused by priorities or signing. The duty encompassed the risk of injury to persons riding in vehicles which might run off the pavement onto the shoulder through driver inattention. The defendant's fault was a legal cause of the accident and it is liable for the damages sustained by the passengers in the car and their survivors.
Specification of Error No. 3Contributory Negligence and Assumption of Risk
The Department contends that recovery by passengers in the Bronco is barred by reason of their contributory negligence and assumption of risk in riding with an intoxicated driver, and in engaging in horseplay with the driver causing him to become distracted and to run off the highway. We adopt the findings and conclusions of the trial court on these issues:
"Next, the Department raised as a defense the contributory negligence or assumption of the risk on the part of the passengers in the Rodgers' vehicle because it was established that an examination of Rodgers' blood for alcohol content revealed 0.13% which the Department argued would have been intoxication to the point that anyone observing Dayton Rodgers immediately before the accident would have readily seen he was under the influence of alcohol to the extent that he could not possibly operate a motor vehicle safely.
The evidence heard by this Court, with the single exception of one expert witness, was to the contrary.
Discounting James Felknor's testimony to some degree because he had been drinking beer with Dayton Rodgers during the day while on the fishing trip, this Court heard Mr. Robert Felknor testify that he would never have gotten into the Bronco with Dayton Rodgers nor would he have permitted it to leave his residence premises if he had observed anything about Dayton to indicate he was under the influence of alcohol. Mr. Felknor had not had anything at all alcoholic to drink and his job was Safety Supervisor of Lake Plain Dealing, a recreational facility at Plain Dealing, Louisiana where one of the chief problems had been excessive use of alcohol by users of the lake. He had been Safety Supervisor at this lake from 1964 or 65 until the accident date, had obtained adoption of an ordinance to prohibit drinking at the lake; and had been appointed a deputy sheriff to help enforce the prohibition. He testified that he personally patrolled the lake in his own boat.
This Court was impressed that Mr. Felknor meant it when he said he would not have ridden with Dayton Rodgers if he had observed any signs of intoxication on Rodgers' part nor would he have permitted his son, son-in-law and nephew to go with him.
William Curry, who did drink one beer in the yard before the trip began, also testified that there was no indication that Rodgers was under the influence of the beer he had consumed during the day while on the fishing trip.
Dr. C. H. McCuller, practicing physician and former coroner of Bossier Parish testified that it was very possible that a person could have a 0.13% blood alcohol content and not evidence the influence to an untrained observer.
Only Ray Herd, Director of the Northwest Louisiana Crime Lab expressed the opinion that this much blood alcohol would cause Rodgers or anyone else to show visible signs of intoxication.
This Court is of the opinion that under the facts established in this case the passengers in the Rodgers vehicle were not contributorily negligent by riding with Dayton Rodgers because the Department failed to prove by a preponderance of the evidence *146 all three requirements of the Prestenbach case [Prestenbach v. Sentry Insurance Company, 340 So.2d 1331 (La.1976)], i. e. that Rodgers was intoxicated, his intoxication was a cause of the accident, and the passengers knew, or should reasonably have known from personal observation of the driver's activities that he was intoxicated.. . .
Further, the Department contended that the passengers Jerry Brandon and James Felknor were distracting Dayton Rodgers by talking to and kidding him about the fishing trip and a particular fishing lure which James Felknor had taken from Rodgers' tackle box and that this activity on their part was negligence contributing to the accident which would bar recovery on the part of the widow and children of Brandon and on the part of James Felknor.
Again the burden of establishing this alleged contributory negligence was with the Department, and again, in this Court's opinion, the Department failed to meet this burden. True there was testimony of kidding of Rodgers on James Felknor's part, but nothing done or said that would be sufficient to cause Rodgers to lose control of his vehicle or leave the hard surface portion of the roadway. . . ."
Specification of Error No. 4Court Costs
The trial court was correct in assessing all court costs, including expert witnesses fees against the Department of Highways. Segura v. Louisiana Architects Selection Board, 362 So.2d 498 (La.1978). See also: Act 467 of 1978 which enacted LSA-R.S. 13:5112 and amended LSA-R.S. 13:4521 to allow assessment of all court costs against the State, and Hopkins v. Department of Highways, 364 So.2d 616 (La. App. 3rd Cir. 1978), which gave retroactive effect to the 1978 Act.
Specification of Error No. 5Awards to Mrs. Brandon
For the wrongful death of her husband the trial court awarded Mrs. Brandon $10,000.00 for his pain and suffering prior to death, $100,000.00 for loss of love, affection and companionship, and $350,000.00 for loss of support. Each of the two children were awarded $40,000.00 for loss of love, affection and companionship.
The defendant argues the amounts awarded are excessive, citing several cases (all decided prior to 1975) in which smaller awards were made. Argument is made that the economist's projection of loss of support is speculative and loss of support cannot be calculated with mathematical certainty.
Plaintiff Mrs. Brandon contends the awards are too low and should be increased. Plaintiff particularly argues that the economist projected loss of support at $567,797.89, but the trial court arbitrarily awarded only $350,000.00 for this item of damages.
Jerry Lee Brandon was either unconscious, or conscious but in shock, when first observed immediately after the accident. One witness observed that his eyes were open at first. On the way to the hospital in the ambulance he went into convulsions, showed other signs of serious injury and was making "gurgling" sounds. At the time of admission to the hospital he had no motor reaction but his vital signs were intact. The diagnosis was basal skull fracture and severe cerebral lacerations. Surgery was performed and postoperatively he never regained any signs of motor functions and never had any reflexes. He was pronounced dead in the late afternoon of the next day. The award of $10,000.00 for Brandon's pain and suffering prior to his death is appropriate, within the trial court's discretion, and in line with recent awards in similar cases. Compare Marceleno v. State of Louisiana, Department of Highways, 367 So.2d 882 (La.App. 2nd Cir. 1978) and cases cited therein.
Jerry and Beverly Brandon met and married while he was at Louisiana Tech, where he was a varsity basketball player. Upon his graduation in 1973, he became a teacher and coached both basketball and baseball at Glenbrook Academy in *147 Minden. The headmaster at the school described Brandon as having the ability and potential of going on to the college level in his field.
Brandon was 25 years old at the time of his death and his wife was 23. Jonathan Dustin Brandon was born in September, 1974 and Jerry Lee Brandon II was born in September, 1975, after his father's death. The family relationship was close and happy.
The awards of $100,000.00 to Mrs. Brandon and $40,000.00 to each child for loss of love, affection and companionship are well within the range of the trial court's discretion and are neither too low or too high.
The award for loss of support represents a substantial reduction from the projection made by Dr. Herbert Hamilton, professor at Southwestern University and an expert actuary. His opinion was soundly based on the usual factors such as earnings at time of death, work life expectancy, appropriate discounts, and the like. Nevertheless, recognizing that projections of future earnings and loss of support are necessarily speculative and cannot be calculated with mathematical certainty, the trier of fact is not required to accept actuarial estimates precisely. We find no abuse of the trial judge's much discretion in the award for loss of support.
Specification of Error No. 6Release of Joint Tort-Feasor
Defendant contends plaintiffs are entitled to recover only one-half of their damages from the Highway Department because they released the insurer of Rodgers, a joint tort-feasor, from liability. The Department cites Harvey v. Travelers Insurance Company, 163 So.2d 915 (La.App. 3rd Cir. 1964) and Smith v. Southern Farm Bureau Casualty Insurance Company, 247 La. 695, 174 So.2d 122 (1965).
The Department's contention is without merit and the cited cases are not applicable to the circumstances of this case. Here, the plaintiffs did not release the estate of Dayton Rodgers, the joint tort-feasor. They did not release Rodgers' liability insurer, although they did withdraw the money deposited into the registry of the Court by the insurer, who conceded liability and paid its policy limits plus interest. The Department itself released both the estate of Rodgers and the insurance company.
The rationale of Harvey is that where a claimant releases one of two joint tort-feasors and thereby deprives the remaining tort-feasor of its right to enforce contribution, the claimant can only recover one-half of his damages against the remaining tort-feasor. Here, plaintiff has done nothing to interfere with the Department's right to contribution. The Department itself released its rights in this respect. Plaintiffs are entitled to full recovery of their damages from the Department, subject only to a credit for the amount paid by Rodgers' insurer, which credit was given in the judgment. See: Casimere v. Ryder Truck Rental, Inc., 324 So.2d 855 (La.App. 4th Cir. 1976), writ denied 329 So.2d 453 (La.1976); Mullin v. Skains, 205 So.2d 207 (La.App. 2nd Cir. 1968) and 252 La. 1009, 215 So.2d 643 (La.1968); and Cole v. Golemi, 271 So.2d 65 (La.App. 4th Cir. 1973).
Decree
For the reasons assigned, the judgment of the district court is affirmed at appellant's costs.
Affirmed.