469 So.2d 1039 (1985)
Dossie Lonnette GOLDEN, Plaintiff-Appellant,
v.
MADDEN CONTRACTING COMPANY, INC., et al., Defendants-Appellees.
No. 16750-CA.
Court of Appeal of Louisiana, Second Circuit.
May 8, 1985.
Rehearing Denied June 7, 1985.
*1040 Richard R. Storms, for plaintiff-appellant, Dossie Lonnette Golden.
Campbell, Campbell & Johnson by John T. Campbell, for defendant-appellee, Madden Contracting Co., Inc.
Mayer, Smith & Roberts by Caldwell Roberts, for defendant-appellee, Madden Contracting Co., Inc. and United States Fidelity & Guaranty Co.
Robert T. Talley, for defendant-appellee, State of Louisiana, Department of Transp. and Development.
Before HALL, JASPER E. JONES, SEXTON, NORRIS and LINDSAY, JJ.[*]
SEXTON, Judge.
Plaintiff-appellant, Dossie Lonnette Golden, appeals a judgment in favor of the defendants-appellees, Madden Contracting Company, Inc. (hereinafter sometimes referred to as Madden), United States Fidelity & Guaranty Company (Madden's insurer), and the State of Louisiana, through the Department of Transportation and Development (hereinafter sometimes referred to as the DOTD), denying her claim for damages resulting from an automobile accident allegedly caused by the defective condition of a roadway shoulder under construction and the failure to adequately warn the plaintiff of that defective condition. We affirm.
On August 21, 1982, at approximately 5:00 p.m., plaintiff was southbound on Louisiana Highway 9 between Arcadia and Bienville, Louisiana. On that date, Louisiana Highway 9 was being overlaid by Madden Contracting Company, Inc. of Minden, Louisiana, pursuant to a contract with the State of Louisiana, through the Department of Transportation and Development. The 7.9 mile section of Highway 9 being overlaid was marked with signs stating "Under Construction" and "Speed Limit 45 MPH." These signs, along with several signs announcing "Road Construction Ahead" were placed at the beginning of the construction area and approximately every three-fourths of a mile throughout the construction area. The signs, which were required by the contract between Madden and the DOTD, were shown to have been in place on the date of this accident.
Highway 9 was being overlaid with two layers of asphalt. Each layer is approximately 1½ inches thick. At the site of the accident, both lanes had received one layer of asphalt, however, only the southbound lane, in which Ms. Golden was traveling, had received a second layer of asphalt. James Madden, president of Madden Contracting Co., Inc., testified that in overlaying a roadway, they put down a layer of asphalt on one lane of the roadway for approximately two to three miles, then the next day put down a layer of asphalt on the other lane. Once the overlay has been completed on both sides of the road, the asphalt is allowed to "cure" for approximately two days to allow it to support the weight of the equipment required to level the shoulder of the road. After the curing period, the shoulder is then brought up to the level of the road. Mr. Madden testified that normally the shoulder gravel is brought up to the level of the roadway within two days after the paving crew finishes. According to Mr. Madden's testimony and the project diary, at the accident site the southbound lane had been given its second coat of asphalt the day before and was in the curing stage.
The accident occurred approximately four miles into the construction project. At that point, Ms. Golden testified that "for some reason" she allowed the right wheels of her car to stray off the roadway onto the shoulder, which was several inches below the height of the southbound traffic *1041 lane. While some of the testimony is contradictory, the evidence clearly supports a finding that the drop-off was approximately 3½ to 4½ inches. Ms. Golden almost immediately attempted to jerk her car back on the roadway, and in doing so, her right tires "scrubbed" or "scruffed" on the edge of the drop-off. She lost control and the car careened across the roadway, ran off the road on the opposite side and flipped one and one-half times in the ditch.
Ms. Golden was able to extricate herself from the upside down automobile and began walking along the road in an attempt to obtain assistance. Two ladies stopped and transported her to Bienville General Hospital Emergency Room where she was treated and hospitalized for four days.
Ms. Golden's injuries consisted of a strain to her neck, a fracture in the shoulder area of her right arm, a deep wound to her right leg, bruises and scratches. The accident also caused large increases in her blood pressure and intermittent difficulty with her eyes and swallowing. Her treating physician, Dr. D.F. Overdyke, has recommended further corrective surgery on her shoulder and is of the opinion that she has suffered a twenty-five percent disability of the right shoulder and a two to three percent disability of the neck as a result of her injuries.
Ms. Golden testified that although she was somewhat familiar with the road, having driven on it several times before, she had not traveled it since construction began and stated that it had been approximately two months since she had been on Highway 9. She testified that she saw only one "Under Construction" sign and one "Speed Limit 45 MPH" sign at the beginning of the project, but noticed no other signs. She stated that she had slowed down to 40 mph and was driving very carefully. She further stated that although she noticed there was a difference between the height of the southbound lane and that of the northbound lane, she could not tell that there was a drop-off from the roadway to the shoulder. She also testified that she did not know how or why she allowed her right wheels to stray from the roadway. The investigating officer, Louisiana State Trooper Jones T. Baker, testified that when he interviewed the plaintiff approximately one and one-half hours after the accident at Bienville General Hospital, she stated that she may have looked away or looked for something on the floor. His investigation corroborated Ms. Golden's testimony that she had almost immediately attempted to return the car to the roadway after she ran off the shoulder. The investigation revealed that the car had been on the shoulder for only approximately 30 feet before Ms. Golden attempted to return to the roadway and lost control of her vehicle. The accident occurred in mid-afternoon on a clear, sunny day.
The lower court denied recovery by Ms. Golden, holding the accident was caused solely by her negligence in allowing the car to leave the roadway despite a clearly visible and obviously dangerous condition presented by the road construction. The lower court in denying recovery to Ms. Golden, held that defendants had taken adequate steps to warn and protect the motoring public and that the accident was due to appellant's failure to maintain proper control of her car under prevailing conditions.
Ms. Golden has appealed claiming that the trial court erred in finding that the DOTD and Madden were not negligent and in its finding that she was guilty of negligence which was the sole cause of the accident.
Was the State of Louisiana, Department of Transportation & Development, and Madden Contracting Company, Inc. and its insurer, United States Fidelity & Guaranty Company, guilty of a breach of duty in failing to maintain the public roads in a safe condition so as not to expose the public to unreasonable dangers?
The general duties of the DOTD toward the traveling public are based on the DOTD's knowledge of road conditions and the need for safe roadways as set forth in the case of Sinitiere v. Lavergne, 391 *1042 So.2d 821 (La.1980), where the Supreme Court held as follows:
It has been repeatedly stated that the Department is not a guarantor of the safety of travelers but, rather, owes a duty to keep the highways and its shoulders reasonably safe for non-negligent motorists. Liability based upon negligence is imposed when the Department is actually or constructively aware of a hazardous condition and fails to take corrective action within a reasonable time.
Since road shoulders are only designed for temporary use when a motorist finds himself off the roadway, the Department's duty of care is generally discharged at a level of construction and maintenance less than that required for the primary road surface. However, an implicit necessity for the functional use of a shoulder is a connection between the roadway and shoulder that allows for safe gradual movement from one to the other.
As this court recognized in Brandon v. State, Through Department of Highways, 367 So.2d 137 (La.App.2d Cir. 1979), writ denied, 369 So.2d 141 (La. 1979), the standard of care required in a construction area is somewhat lower, but there is nevertheless a duty to warn motorists of dangerous construction conditions. As we pointed out in Brandon:
Recognizing the necessity of construction work in the maintenance of highways and that hazards will often necessarily exist during the course of construction, this duty is relaxed in connection with construction activities according to the reasonable necessities of the circumstances. The Department's [State Highway Department] duty during the course of construction is usually discharged by the giving of adequate warning. What constitutes adequate warning depends on the nature of the hazard to be guarded against.
It was further noted in Von Cannon v. State, Department of Highways, 306 So.2d 437 (La.App.3d Cir.1975), writ denied, 309 So.2d 681, 682 (La.1975), that:
There is no hard and fast rule as to the types of warnings or safeguards [against dangerous highway conditions]. Warnings should be sufficient to alert the ordinary, reasonable motorist, having in view the probable traffic, the character of the road and the use reasonably to be anticipated (citation omitted). Safeguards should be commensurate with the danger.
More recently, this court stated in Stephens v. State, Through the Department of Transportation, 440 So.2d 920 (La. App.2d Cir.1983), writ denied, 443 So.2d 1119 (La.1984), as follows:
The duty of The Department has been more specifically enunciated by statute and case law. LSA-R.S. 48:35 mandates that The Department "shall adopt minimum safety standards with respect to highway design, construction and maintenance." The law imposes upon The Department the duty of maintaining public roads in a safe condition so as to not expose the public to unreasonable dangers. This general duty includes in its scope the more specific duty of providing proper safeguards or adequate warnings of dangerous conditions on the highway. The Department clearly has a duty to warn motorists of dangers engendered by ongoing road repair. The duty of reasonable care operative under negligence principles requires The Department to erect barriers, signs and markings which are sufficiently effective to warn the public of dangerous road conditions. Warnings should be sufficient to alert the ordinary motorist. The law imposes a high degree of care on governmental agencies charged with the responsibility of maintaining traffic signs, signals and warning devices. [Citations omitted.]
As was the case in Booth v. Potashnick Construction Company, 420 So.2d 512 (La.App.2d Cir.1982), writ denied, 423 So.2d 1183 (La.1982), the critical question here is: Did the DOTD fulfill its duty to exercise reasonable care in warning motorists of the *1043 dangerous road condition in this construction zone?
Before applying these legal principles, we must underscore the fact that this case does not involve a road shoulder which became hazardous because of faulty maintenance, but involves a hazard created by the paving of the road in connection with an ongoing construction project legitimately designed to improve the highway for the motoring public. To recapitulate, when necessary repairs are undertaken by the Department, certain risks are inherent in the construction process, and the duty to warn the motoring public of these risks therefore arises.
According to the evidence presented at trial, the following warning signs were in place as per the requirements of the DOTD: Approximately 2000 feet from the beginning of the project a "Road Construction Ahead" sign; a "Road Construction 1500 Feet" sign followed by "Road Construction 1000 Feet" and "Road Construction 500 Feet" signs; a barricade at the beginning of the project, with a sign proclaiming "Road Construction Next 7.9 Miles" and a speed limit of 45 mph; and along the length of the project, "Under Construction" and "Speed Limit 45 MPH" signs approximately every three-fourths of a mile. However, there were no "Low Shoulder" warning signs anywhere along the project. Terry Blackburn, the DOTD's project engineer, testified that he could have required low shoulder signs to be erected during the period in which the dangerous conditions existed, but he did not do so because in his opinion he felt they were unnecessary.
However, we find that the causal connection, which must exist between the highway department's failure to post low shoulder signs and the plaintiff's injury in order for her to recover, was simply not established. The trial court concluded that the accident in this case was due to the plaintiff's failure to maintain proper control of her car. A finding that Mrs. Golden's inattentiveness was the cause of the accident inheres in the trial court's quotation of testimony and written reasons. The trial court noted that while plaintiff was unsure why she directed her car onto the shoulder, she told the investigating state trooper that she "possibly had looked off and may have looked for something on the floor." This finding is adequately supported in the record and thus is not clearly erroneous. Finding no manifest error, we affirm the finding of the trial court. Arceneaux v. Domingue, 365 So.2d 1330 (1978).
Nevertheless, we feel compelled to address appellant's argument that this case is parallel to Stephens, supra. In Stephens there was only one construction sign which was well removed from the activity of the patching crew. That sign did not warn of the nature of the activity and the flag man working with the patching crew was situated too close to that crew. Additionally, his flagging activities were only intermittent. We held that these facts were sufficient to support the trial court's determination that there was insufficient warning by the highway department, that the department's mode of operation was careless and substandard, and that plaintiff was not contributorily negligent.
In sharp contrast, in the instant case, the project was well signed. While there was not a "Low Shoulder" sign, the evidence clearly demonstrates that the shoulder condition was obvious, and this plaintiff had driven several miles into the project before straying off the road. Simply stated, plaintiff's injuries were caused by her own inattentiveness and not the highway department's failure to post low shoulder signs.
Likewise, we determine that DOTD is not strictly liable for plaintiff's injuries. The standard for evaluating whether an unreasonable risk of harm exists was clarified by the Supreme Court's recent enunciation in Entrevia v. Hood, 427 So.2d 1146 (La.1983), wherein the court explained that:
The judicial process involved in deciding whether a risk is unreasonable under Article 2317 is similar to that employed in determining whether a risk is unreasonable *1044 in a traditional negligence problem. Hunt v. City Stores, Inc., 387 So.2d 585 (La.1980), and in deciding the scope of duty or legal cause under the duty/risk analysis. Hill v. Lundin Associates, Inc., 260 La. 542, 256 So.2d 620 (1972); Green, The Casual Relation Issue, 60 Mich.L.Rev. 543, 563 (1962). This is not because strict liability under Article 2317 is equivalent to liability for negligence, but because in both delictual areas the judge is called upon to decide questions of social utility that require him to consider the particular case in terms of moral, social and economic considerations, in the same way that the legislator finds the standards or patterns of utility and morals in the life of the community. B. Cardozo, The Nature of the Judicial Process, at p. 105 (1921); See also, Green, The Causal Relation Issue, 60 Mich.L.Rev. 543 (1962).
In Booth, supra, Judge Fred Jones foresaw the balancing requirements of Entrevia as he wrote to deny strict liability in a highway construction project accident case. Booth held that highway construction projects do not create an unreasonable risk of harm to the public under LSA-C.C. Art. 2317 absent some very unusual circumstance.
Finally, we review the trial court's determination that Madden Contracting Company was not negligent. We agree. The record shows that the DOTD contracted with Madden to overlay the highway in question including bringing the shoulders level with the roadway. The DOTD, through its project engineer, who acted as supervisor of the entire construction project, assumed the responsibility under the contract, of controlling what warning signs were required of Madden, and the exact placement thereof. The evidence shows that Madden had fully complied with the signing provisions of the contract at the time of the accident.
The overlay work was taking place in as safe and efficient a manner as possible under today's technology. The condition of the shoulder was not caused by any delay on the part of Madden, but merely was a necessary danger in light of the work required and the current state of technology for road overlays.
Therefore, our review of the record convinces us that the trial judge was not clearly wrong in finding Madden not negligent under the circumstances presented. Arceneaux v. Domingue, supra.
The decision of the trial court rejecting the demands of the plaintiff is therefore affirmed and all costs herein are assessed to plaintiff.
AFFIRMED.
NORRIS, J., dissents with written reasons.
JASPER E. JONES, J., dissents for the reasons assigned by NORRIS, J.
NORRIS, Judge, dissenting.
I respectfully dissent.
This is a classic comparative negligence case. La.C.C. art. 2323.
Citations are almost unnecessary for the proposition that shoulder drop-offs in excess of 2 inches create unreasonably dangerous conditions on state roads. LeBlanc v. State, Dept. of Highways, 419 So.2d 853 (La.1982); Sinitiere v. Lavergne, 391 So.2d 821 (La.1980); Thomas v. Jackson, 442 So.2d 1186 (La.App.2d Cir.1983), writ denied 445 So.2d 435 (La.1984); Smith v. State, Through Dept. of Transportation and Development, 412 So.2d 685 (La. App.2d Cir.1982), writ denied 413 So.2d 907 (La.1982).
During construction work necessary in the maintenance of highways, hazardous conditions will often necessarily exist. However, the DOTD has a duty during such construction to give adequate warning of the nature of those hazards. Brandon v. State, Through Dept. of Highways, 367 So.2d 137 (La.App.2d Cir.1979), writ denied 369 So.2d 141 (La.1979). "Road Construction Ahead" signs are intended to be followed by more specific traffic directives. Stephens v. State, Through Dept. of *1045 Transportation and Development, 440 So.2d 920 (La.App.2d Cir.1983), writ denied 443 So.2d 1119 (La.1984).
In the instant case, the DOTD admittedly knew that this construction project would create hazardous low shoulders of 3 to 43/4 inches for approximately two miles at various points of the project. Yet, despite this knowledge, the department specifically opted not to require its contractor to warn the motoring public of this dangerous condition that would exist at different places and at different times along the 7-plus mile stretch. "Low Shoulder" signs should have been required by the DOTD in order to relieve it of the high degree of care imposed upon it as a governmental agency charged with the responsibility of providing adequate signing. This would warn motorists of dangerous conditions engendered by ongoing road repairs or construction. Stephens v. State, supra. The department was negligent in not requiring its contractor to utilize "Low Shoulder" signs under the circumstances presented in this record and its negligence was a contributing cause of plaintiff's accident.
I do agree, however, with the majority that plaintiff, Golden, was also negligent by being inattentive, running off the paved portion of the road and attempting to return to the paved portion without reducing her speed and waiting until re-entry could be accomplished safely.
I also agree with the majority that the contractor, Madden, was not negligent because it fully complied with the signing provisions of its contract with the DOTD.
I would apportion negligence in the percentage of 70% to plaintiff and 30% to the DOTD. Golden should recover special and general damages for her injuries suffered as a result of this accident which should be reduced by her degree of negligence.
JASPER E. JONES, Judge, dissenting.
I dissent for the reasons assigned by Judge Norris.
NOTES
[*] Five judge panel pursuant to La. Const. Art. 5, Sec. 8(B).