478 So.2d 691 (1985)
Donna JONES, et al., Plaintiff-Appellee,
v.
STATE of Louisiana, Through the DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT, et al., Defendant-Appellant.
No. 84-625.
Court of Appeal of Louisiana, Third Circuit.
November 7, 1985.
*692 Robert J. Adams, Lafayette, for defendant-appellant-appellee.
Edwards, Stefanski & Barousse, Homer Ed Barousse, Jr., Crowley, for plaintiff-appellee-appellant.
Andrus, Preis & Kraft, Edwin J. Preis, Jr., Lafayette, Cooper, Ortego & Woodruff, John Ortego, Abbeville, Jeansonne, Briney & Goudelocke, Patrick J. Briney, Lafayette, for defendant-appellee.
Before DOMENGEAUX, C.J., and GUIDRY, FORET, LABORDE and KING, JJ.[1]
KING, Judge.
The issue presented by this appeal is whether or not the trial court was in error in rendering judgment for the plaintiff and against the defendant.
This lawsuit was instituted by Donna Jones (hereinafter sometimes referred to as plaintiff), individually, and as tutrix of her minor child, against the State of Louisiana, through the Department of Transportation and Development (hereinafter sometimes referred to as the DOTD) for the wrongful death of David Jones (hereinafter sometimes referred to as decedent), her husband and the child's father. The claim arose when decedent rode a motorcycle off Louisiana Highway 13 in Vermilion Parish, Louisiana, and fatally crashed into a fence running alongside the highway. The trial judge found that a drop-off of approximately four to six inches from the roadway to the shoulder was the only cause-in-fact of the accident and awarded plaintiff, Donna Jones, individually, and as tutrix of her minor child, $130,000.00 for loss of support and $20,000.00 ($10,000.00 each to the mother and the child) for loss of love, affection, and companionship.
The DOTD timely appeals to contest the factual conclusions of the trial judge alleging that the trial judge erred by: (1) finding that the highway and shoulder were defective and concluding that it was the cause-in-fact of the accident; (2) finding that David Jones, the decedent, was not negligent; and, (3) awarding excessive damages to plaintiff. Plaintiff answered DOTD's appeal to contest the inadequacy of the award and to seek an increase in the amount of damages.
For the reasons hereinafter set forth, we reverse.

FACTS
The accident occurred on April 6, 1978 at about 3:40 o'clock P.M. in Vermilion Parish, Louisiana. The evidence shows that the paved traveled portion of Louisiana Highway 13 in the curve at the site of the accident was being repaired by pumping concrete under the paved roadway and raising it, and that it was under construction when the accident occurred. The paved travel portion of the roadway had been raised from four to six inches above the shoulder at the place where the paved roadway was banked and curved to the left. The curve was properly signed and had an advisory speed plate of 45 miles per hour approximately 650 to 750 feet before the curve. The entire area of the highway preceding the curve was also under construction and was also properly signed as under construction though there were apparently no signs marking low shoulders.
The evidence also shows that the decedent was an inexperienced and unlicensed motorcyclist, apparently riding a borrowed motorcycle for the first time, and that he was driving the motorcycle while legally intoxicated (his blood alcohol after the accident was .12%). The decedent drove his motorcycle straight off of the highway in the curve, went down the embankment of the highway, hit a ditch, and then was thrown off the motorcycle into a fence where he was killed as a result of a broken neck. Eyewitness testimony of two people in a car, driving at approximately 55 miles per hour, whom decedent passed at a high rate of speed and whom he was pulling away from on the straightaway approaching the curve, was that they saw the decedent start into the curve and then go in a *693 straight line and just gradually disappear from their sight down the embankment. These eyewitnesses did not see the motorcyclist flip over at the edge of the highway. The physical facts of the accident show that the decedent was approaching the curve at a speed of 55 to 60 miles per hour and that he left 154 feet of skid marks on the paved roadway before reaching the shoulder and that the motorcycle then continued braking approximately 165 feet down the embankment and into a ditch. The decedent was found hanging in a fence which was located on the other side of the ditch at the bottom of the embankment.
The trial judge concluded that the negligence of the decedent, if any, had no causal connection to his fatal injuries. The trial judge further concluded that the motorcycle was under control and braking until the four to six inch drop-off of the shoulder caused the motorcycle to flip over, when it left the elevated paved roadway, and this caused it to go out of control and finally crash into the fence at the bottom of the embankment. The trial judge also found that the decedent's intoxication did not cause or contribute to the accident. For these reasons, judgment was rendered in favor of the plaintiff and against the DOTD.
The DOTD is under a duty to maintain safe highways and shoulders and that duty extends to people who may foreseeably be placed in danger by an unreasonable condition, including persons who may inadvertently drive onto the shoulder of the roadway. Sinitiere v. Lavergne, 391 So.2d 821 (La.1980); Rue v. State, Department of Highways, 372 So.2d 1197 (La.1979). Before going further we must note the obvious; this case does not involve a road shoulder which became hazardous because of faulty maintenance, but involves a hazard created by the raising of the roadway in connection with an on-going construction project legitimately designed to improve the highway for the motoring public. The DOTD's standard of care in an area of highway under construction is not the same as that required on a normal highway not under construction, although there exists a duty on the part of the DOTD to warn motorists of dangerous construction conditions. Golden v. Madden Contracting Co., Inc., 469 So.2d 1039 (La. App. 2nd Cir.1985), and cases cited therein; Booth v. Potashnick Construction Co., 420 So.2d 512 (La.App. 2nd Cir.1982), writ den., 423 So.2d 1183 (La.1982); Brandon v. State, Department of Highways, 367 So.2d 137 (La.App. 2nd Cir.1979), writ den., 369 So.2d 141 (La.1979). The evidence showed that the entire area of the highway approaching the curve and the curve itself were under construction and that this entire highway area was signed to warn motorists of the construction. However, in light of the reasons hereinafter set forth, we will not further discuss the DOTD's duties in this instance.
After a careful review of the record, we find that the trial court committed manifest error in concluding that the four to six inch drop-off, where the roadway joined the shoulder, was the cause-in-fact of the accident and the death of decedent, and in finding that the decedent was not negligent. This accident did not occur because of the drop-off from the roadway to the shoulder. This accident occurred because decedent, an unlicensed motorcycle driver with no experience whatsoever in riding motorcycles and who was legally intoxicated, was speeding and failed to maintain control of the motorcycle. As a result, he rode the out-of-control motorcycle off the paved roadway, across the shoulder and down the highway embankment, and into a ditch from where he was thrown into a fence and killed. Simply stated, decedent's death was caused by his own negligence and not the low shoulder or the DOTD's failure to maintain the shoulder level with the paved portion of the roadway while the roadway was under construction.
The witnesses behind decedent, Mr. and Mrs. Leleux, testified that decedent passed their car, traveling in the same direction, at a speed approaching 60 miles per hour. Mr. Leleux further testified that the motorcycle was still pulling away from his car *694 when the accident happened. The 154 feet of skid marks that were left on the paved roadway reflect the fact that decedent entered the curve, which was marked by a caution sign with a posted 45 mile per hour speed limit, at an excessive rate of speed and could not negotiate the curve. There was absolutely no evidence presented as to any defects in the roadway before or at the point where the decedent started braking, or at any point along the path of the skid marks, which could have caused the motorcycle to start leaving the highway. It is clear that decedent, realizing that he could not negotiate the curve, applied the motorcycle's brakes, skidded the 154 feet to the edge of the roadway and then left a 165 foot path of skid marks down the embankment at the curve, before being thrown from the motorcycle into a fence. Plaintiff contends that upon the motorcycle dropping upon the low shoulder it struck the elevated edge of the paved roadway which caused the motorcycle to flip over and go out of control and that decedent was killed as a result of this flip. However, Mr. Leleux testified that he did not see the motorcycle flip but that it just gradually disappeared, going out of sight down the embankment. The plaintiff's purported expert witnesses could not definitely conclude that the motorcycle flipped over because it struck the drop-off, nor were their opinions based on concrete facts. For the accident to occur as plaintiff suggests, decedent would have had to have been traveling at an unimaginable rate of speed in order for him to have been flipped and thrown 167 feet in the air from the edge of the paved roadway and into the fence at the bottom of the embankment. Even if the drop-off between the roadway and shoulder first caused the motorcycle to go out of control, rather than flipping it over, we still have to consider why the motorcycle got to the point at the edge of the paved roadway, where it joined the shoulder, in the first place. We find that the shoulder drop-off was not the cause-in-fact of decedent's accident and death and find no merit in plaintiff's assertions.
This accident is clearly distinguishable from the Rue case and its progeny where motorists inadvertently strayed onto a defectively maintained shoulder of the highway. Here, decedent was deliberately trying to keep the motorcycle on the roadway, as reflected by the skidmarks before leaving the paved portion of the roadway, but because of his excessive speed, inexperience, drunkenness, or a combination of these things, he was unable to do so. His leaving the roadway and driving onto the shoulder was clearly not inadvertent. The decedent did not inadvertently or carelessly go off the paved roadway onto the shoulder; he was desperately trying not to go off the paved traveled portion of the roadway onto the shoulder.
The decedent's negligence in leaving the roadway was the proximate cause of the accident and this negligence was caused by his excessive speed, inexperience, and drunkenness, or all three factors combined. Having found that decedent's own negligence was the proximate cause-in-fact of the accident and his death, it is unnecessary for us to address the question of the DOTD's liability or the amount of damages.
For the reasons set forth above, we find that the trial court committed manifest error and, accordingly, we reverse the trial court's judgment and render judgment in favor of the DOTD and against the plaintiff dismissing her suit, with prejudice, at her cost. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). Canter v. Koehring Company, 283 So.2d 716 (La.1973). The costs of this appeal are taxed to the plaintiff-appellee.
REVERSED AND RENDERED.
LABORDE, J., dissents with reasons.
LABORDE, Judge, dissenting.
Mindful of our Supreme Court's admonishment not to substitute our judgment for that of the trier of fact, I respectfully dissent. Soileau v. South Cent. Bell Tel. Co., 406 So.2d 182 (La.1981).
*695 While the facts are such that a different trier of fact might have found in favor of DOTD, the trial judge in this case did not. The record contains ample proof to support the trial judge's finding of fact. Under these circumstances, it is our duty to affirm. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
The following is my appreciation of the facts contained in the record which, in my opinion, support the trial judge's conclusions.
A lawsuit was brought by Donna Jones, individually and as tutrix of her minor child, against the State of Louisiana, through the Department of Transportation and Development (DOTD) for the wrongful death of Donna's husband and the child's father, David Jones. The claim arose when David Jones road a motorcycle off of La. Highway 13, flipped over, and fatally crashed into a fence running along side the highway. The trial judge held that a drop of about four to six inches from the highway to the shoulder was the only cause in fact of the accident and awarded plaintiff Donna Jones, both individually and as tutrix for her minor child, $130,000.00 for loss of support and $20,000.00 ($10,000.00 each to the mother and the child) for loss of love, affection, and companionship. Defendant DOTD appeals. I would affirm.
DOTD brings this appeal to contest the factual conclusions of the trial judge. It asserts that the trial judge erred by 1) finding that the highway and shoulder were defective and concluding that it was the cause in fact of the accident, 2) finding that David Jones, the deceased, was not contributorily negligent for the accident, and 3) awarding excessive damages to plaintiff Donna Jones in this case. Plaintiff answered DOTD's appeal to contest the inadequacy of the award.
In his written "Reasons for Judgment," the trial judge stated that:
"The evidence shows that the cycle went from the highway towards the shoulder and then flipped over. The driver was thrown from the cycle and was instantly killed. The shoulder of the roadway was from four to six inches lower than the road surface where the cycle left the road and, according to expert opinion was the cause of the flipping of the cycle.
....
The Highway Department is under a duty to maintain safe highways and shoulders, that duty extending [sic] to protect the people who may foreseeably be placed in danger by an unreasonable condition. Sinitiere v. Lavergne, 391 So.2d 821; (La.1980)[;] Rue v. State Department of Highways, 372 So.2d 1197 (La.1979)[.]
The plaintiff has proved by a preponderance of the evidence that the highway and shoulder were defective; that the Department had knowledge of the defect and did nothing to correct it and that the defect was the cause-in-fact of the accident and the death of Jones."
I do not find error in this conclusion of the trial judge.
The trial judge also concluded that the negligence of David Jones, if any, had no causal connection to his fatal injuries when Jones drove the motorcycle off of the state highway and encountered a 4 to 6 inch drop to the shoulder. Therefore, Jones was not guilty of contributory negligence.
The evidence at trial shows that Jones was an inexperienced motorcyclist, that he was approaching the curve at a speed of 55 or 60 miles per hour even though 650 to 750 feet before the curve there was a curve warning sign with an attached advisory speed plate of 45 miles per hour, and that an analysis of a sample of Jones' blood indicated that there was .12 percent alcohol in his blood at the time of the accident. However, despite Jones' inexperience, the trial judge concluded that Jones had complete control of the motorcycle up until the time he encountered the severe drop from the highway to the shoulder. In his "Reasons for Judgment," the trial judge said:
"The investigating officer found 154 feet of skidmarks from one tire marked in a way to show fishtailing. An expert motorcycler testified that in his opinion *696 the fishtailing skid marks indicated stopping procedure by the operator of the cycle. In his opinion the cyclist had the cycle under control."
During the trial, there was also testimony by Officer Fox, an experienced motorcycle rider, that the curve involved in this accident could easily be negotiated at speeds faster than 55 miles per hour and that he had done so on previous occasions. Finally, the trial judge concluded that DOTD failed to prove that Jones' slight intoxication affected his driving ability. The trial judge said:
"There was evidence to the effect that Jones had a blood alcoholic content of .12% and that this amount of alcohol would affect the driving ability of an ordinary person. No evidence was offered to equate Jones with the "ordinary person".
The Department has the burden of proving contributory negligence and of showing that Jones' intoxication was a contributing cause of the accident.
....
The defendant has not met its burden. It appears that the deceased was slowing the speed of his cycle, and driving off of the highway surface onto the shoulder when his cycle was flipped by the drop from the highway to the shoulder. His reasons for leaving the highway could be many and varied.
The Court is of the opinion that the defective highway was the only cause-infact of the accident."
My review of the record convinces me that the conclusions of the trial judge were not clearly wrong. Therefore, I would not reverse the lower court ruling. Arceneaux v. Domingue, 365 So.2d at 1330.
In appraising the damages incurred by plaintiff, both in her individual capacity and as tutrix for her minor child, the trial judge took into account not only the deceased's lost earning capacity, but also the strained relationship between plaintiff and the deceased and how that might affect the amount of an award.
The trial judge stated:
"At the time of his death Jones was 21 years of age and had a work-life expectancy of 38.6 years.
Dr. G. Randolph Rice and Dr. Roger L. Burford, both economic experts, averaged the decedent's income to be $12,508. Using a percentage increase in gross earnings[,] an annual discount rate[,] and an adjustment for Jones' expenditures[,] Dr. Rice arrived at a figure of $304,310 as his evaluation for loss of support for Mrs. Jones and her child. Dr. Burford, used the same data as did Dr. Rice excepting that Dr. Burford used a married work life expectancy of 29.87 years and arrived at a loss of income in the amount of $243,176.00.
The factors to be weighed in determining the amount due for loss of support includes the decedent's earnings at the time of his death, his age and life expectancy, his work life expectancy, the possibility of an increase or decrease in his earnings, the decedent's income security, the nature of his work, his health, his relationship with his family, his personal expenses and his past work record. Other factors are the age and health of the surviving spouse, the minor children's ages and the effects of inflation and the need to discount future earnings to a present day value. In short, all factors relevant to a determination of the amount of loss of support due to the premature demise of the decedent should be considered.
In determining awards for loss of support, the courts have a duty to fix such awards by giving appropriate consideration to the deflated value of our currency while at the same time discounting the future income stream to its present value.
In the present case, we have circumstances which must be considered. The relationship between the deceased and his wife were [sic] strained. During the year 1977 they were separated for two and one-half (2½) months. At the time of Jones's death he was separated from his wife who filed a separation suit in *697 February 1978, two (2) months before his death.
Damages for loss of support can not be calculated with mathematical certainty. The duty of the court in such cases is to exercise sound judicial discretion and award an amount which, considering all the circumstances, seems just to both parties and is not unduly oppressive to either.
Considering all facts the Court finds the sum of ONE HUNDRED, THIRTY THOUSAND AND NO/100 ($130,000.00) DOLLARS to be a fair award for loss of support.
The minor child was born on June 14, 1978 two (2) months after the death of his father. Considering the fact that no relationship existed between the child and his father and the strained relationship of the widow and the deceased, the Court feels that an award for loss of love, affection and companionship for the child in the amount of TEN THOUSAND AND NO/100 ($10,000.00) DOLLARS and for the widow in the amount of TEN THOUSAND AND NO/100 ($10,000.00) DOLLARS would be equitable."
I have reviewed the record and find that the trial judge's award is not excessive and, in response to plaintiff's request for an increase in the amount of the award, I find that the award is not inadequate. Therefore, I would hold that there was no abuse of discretion on the part of the trial judge and I would not disturb his determination of damages. Reck v. Stevens, 373 So.2d 498, 501 (La.1979).
For the above and foregoing reasons, I respectfully dissent.
NOTES
[1] Five judge panel pursuant to La.Const. Art. 5, Sec. 8(B).