552 So.2d 7 (1989)
Rosie Creppel ALFORD, et al.
v.
ESTATE OF Anthony
v.
ZANCA, Jr.
Nos. 89-CA-220, 89-CA-219.
Court of Appeal of Louisiana, Fifth Circuit.
October 12, 1989.
*9 The Law Offices of Owen J. Bradley, Michael R. Guidry, New Orleans, and Gaudin & Gaudin, Pierre F. Gaudin, Sr., Gretna, for Quitman Alford, Jr., and Sheila Alford, individually and as legal tutrix of the minor, Kevin J. Dermody, plaintiffs-appellants.
Lawrence D. Wiedemann, Allain F. Hardin, New Orleans, for Rosie Alford, plaintiff-appellant.
Emile R. St. Pierre, APLC Destrehan, for defendant-appellee.
Ronny J. Champlin, Baton Rouge, for the State of La., through the Dept. of Transp. and Development, defendant-appellee.
Before CHEHARDY, C.J., and BOWES and GOTHARD, JJ.
CHEHARDY, Chief Judge.
This suit and its companion case, Zanca v. State of Louisiana, et al., 552 So.2d 14 (La.App. 5 Cir.1989), arise from a head-on two-car collision on U.S. Hwy. 61 about 1,200 feet east of the Bonnet Carre Spillway Bridge in St. Charles Parish. Five of the occupants of the cars died; the sole survivor, a four-year-old boy, sustained serious injuries. Judgment was rendered absolving the state Department of Transportation and Development of liability for an alleged defect in the highway. The plaintiffs in both cases have appealed.
At approximately 5:45 p.m. on July 1, 1984, Anthony Zanca Jr. was driving his Ford Bronco truck east on Hwy. 61. He had just come across the Bonnet Carre Spillway Bridge, which was undergoing construction to widen the roadway, when he changed from the left lane to the right lane. The right wheels of his truck apparently went off the 2-inch dropoff on the right edge of the road. His truck then veered sharply to the left across the westbound lanes, colliding head-on with a Chevrolet Nova driven by Roberto Dermody and occupied by Dermody's wife, Charleen, his daughter, Tina, his son, Kevin, and his father-in-law, Quitman Alford Sr. Alford, Zanca, and Roberto, Charleen and Tina Dermody all died at the scene of the accident. Kevin Dermody was severely injured, but survived.
This suit was filed by Rose Alford, widow of Quitman Alford Sr., and by Quitman Alford Sr.'s son and daughter, Quitman Jr. and Sheila Alford. Sheila also appears on behalf of Kevin, as legal tutrix of the orphaned child. Named as defendants were the Estate of Anthony V. Zanca Jr.; the State of Louisiana, Department of Transportation and Development (hereafter called "DOTD"); Boh Brothers Construction Company, Inc., the State's contractor on the construction project; Louisiana Paving Company and T.L. James & Co., Inc., Boh's subcontractors; Allstate Insurance Company, insurer of the Bronco; State Farm Insurance Company, insurer of the *10 Nova; and Colonial Lloyd's Insurance Company, underinsured motorist insurance carrier for the Dermodys. The companion suit, Zanca v. State, 552 So.2d 14, was filed by Anthony Zanca's widow against DOTD, Boh, and their insurers.
State Farm and Allstate tendered their policy limits, respectively $50,000 and $40,000, to the Alford/Dermody plaintiffs and obtained summary judgment dismissing them from this suit. Judgment was rendered in favor of the defendant Estate of Anthony Zanca on an exception of insufficient service. Boh, Louisiana Paving Company and T.L. James settled with the Alford/Dermody plaintiffs for $475,000 and were dismissed, with a reservation of the plaintiffs' rights against DOTD.
Trial of the matter took place with DOTD as the sole remaining defendant. Rather than attempting to prove the 2-inch dropoff between the new road and the old road was a hazard, the plaintiffs tried to establish that DOTD was negligent in placing traffic channelizer barrels within 3 feet of the edge of the new roadway. They argued that Zanca's abrupt swerve after his wheels went over the dropoff was an attempt to avoid one of the barrels. They contended that the presence of the barrel within 3 feet of the edge of the travelled roadway was unreasonably dangerous because it presented such a "formidable obstacle" to a vehicle going off the new roadway that a driver had to swerve to avoid it.
In her reasons for judgment, the trial judge concluded the evidence did not establish that the barrel was a cause in fact of the accident, because "it is not more probable than not that the intimidating effect of the barrel caused the accident, whether or not it was placed too close to the travelled portion of the roadway. * * * [T]here are other as-plausible explanations by witnesses and other credible evidence."
On appeal the plaintiffs assert the district court erred in finding that the location of the barrel was not a cause-in-fact of the accident.

FACTS
The purpose of the road construction project was to widen the spillway bridge road. The construction area began several thousand feet before the west end of the bridge, continued on the bridge itself, extended several thousand feet past the east end of the bridge, and was clearly denoted along its entire length by warning signs and barrels.
On the east side of the bridge four new lanes of roadway had been built immediately adjacent to the north side of the highway. Traffic was being routed through these new lanes while the old roadway was being resurfaced. At the time of the accident the surface of the old roadway was 2 inches below the surface of the new lanes and was awaiting its final layer of asphalt.
The new lanes had been striped clearly with permanent-style lane markings, including solid white lines along the edge of the road. Channelizer barrels, some of metal and some of plastic, had been placed on the old roadway from 25 to 50 feet apart and about 3 feet from the edge of the new roadway.
Scott Reggio, the state trooper who investigated the accident, stated he found yaw marks made by the Bronco as it swerved from the right edge of the new roadway across the four new lanes to the point of impact. Approximately 8 feet 4 inches from where the yaw marks began was an orange metal barrel with a "SPEED LIMIT 45" sign mounted atop it. The barrel, like numerous others in the construction zone, was set in the old roadway a few feet away from the white line marking the edge of the new roadway.
Other testimony established the barrel was 2 feet 8 inches from the edge of the new roadway. The DOTD project engineer's instruction to the contractor was to place the barrels 3 feet from the edge. The guideline manual followed by DOTD provided that signs should be 6 to 12 feet from a roadway edge. It is disputed whether this guideline is for permanent signs only or also applies to signs during construction.
Lieutenant Michael Sunseri of the Louisiana State Police, accepted by the court as *11 an expert in accident reconstruction, stated the point of maximum impact was in the northbound left lane of U.S. 61; that there was nothing to indicate the Nova was exceeding the speed limit; that the Bronco was going about 53 miles per hour in the yaw and could have been going faster before it went into the yaw; that it appeared the right front tire of the Bronco had gone off the roadway edge and the right rear tire may have done so also; that the Bronco appeared to have been out of control as it yawed across the roadway.
He pointed out that, considering the Bronco's speed, the maneuver that resulted in the yaw must have begun much further back than where the yaw marks climb back on the road. He was unable to establish at what point the Bronco had gone off the edge. He did not consider the 2-inch difference between the new roadway and the old roadway a hazard.
The testimony of eyewitnessesthe occupants of the car behind Zanca's vehicle and of another car on the adjacent spillway roadestablished that the weather was dry, with plenty of daylight; that the road surface was in excellent condition; that the construction zone was clearly marked with signs, road striping, and barrels; that the dividing lines and stripes on the road were easy to see and there were no vision obscurements; and that Zanca was driving at a speed of 60 to 65 miles per hour despite the 45-mile-per-hour speed limit in the construction zone.
The results of two post-mortem blood alcohol content (BAC) tests of Zanca's blood were admitted into evidence with objection. A test performed by the Louisiana Department of Public Safety showed the decedent's BAC was .29%; a test by the Orleans Parish Coroner's Office showed his BAC was .31%.
The plaintiffs' expert witnesses were Joseph H. Andre, an expert in automobile accident reconstruction, and Andrew E. Ramisch, an expert in highway engineering, traffic engineering, and accident analysis and reconstruction. Both of them attributed Zanca's sharp swerve to the presence of the sign barrel at the edge of the roadway, noting that the yaw marks began approximately 8 feet before the barrel. Both these experts opined it would have been practical to place the channelizing barrels on the old roadway at least 6 feet away from the edge of the new roadway, in order to provide a shoulder for run-off-the-road vehicles.
In the alternative, Ramisch felt, the barrels could have been removed completely, because there were no obstructions to be avoided on the old roadway. He pointed out that the barrels were not placed close enough together to prevent people from driving in the old roadway if they wished to. Ramisch stated that a metal barrel is a formidable obstacle that commands the respect of drivers, so that any normal person would try not to hit it. He felt that the barrels were a greater hazard than the unfinished road from which they were intended to separate motorists.
Joseph D. BlaschkeDOTD's expert witness in the areas of accident reconstruction, roadway design, traffic engineering, and human factors analysis and the effects of alcoholtestified there is no question that an individual with a BAC of .29-.31% is significantly affected. He pointed out that most people are unconscious by the time they reach that level of BAC; those who are still conscious at that point are normally "very serious drinkers" who drink a lot. At that level, he stated, a person is no longer behaving normally.
Blaschke opined the accident was caused by Zanca's "overcorrecting" his steering when one or both of his right wheels went off the edge of the roadway; he turned more sharply than necessary and lost control of his vehicle. At 60 miles per hour, Zanca would have been travelling 88 feet per second; if he was intoxicated, he did not have time to respond quickly enough. Blaschke stated that no matter how it is assumed Zanca went off the road, the situation would not have caused problems for a normal (i.e., unintoxicated) person.
Blaschke also stated the placement of the sign barrel was not a violation of standards, because there is a lot of freedom of engineering judgment in placement of *12 channelizing devices. Blaschke did not feel the location of the channelizing barrels was an unreasonably dangerous risk, because it is not normally desirable for motorists to use an uncompleted roadway. He pointed out that Zanca, in driving through the construction area preceding the point at which he swerved, had already passed many similar barrels, so the presence of the sign barrel at the side of the temporary roadway could not have been a surprise to him.
The DOTD engineers on the project, Nain Afis and Walter Perdue, testified the purpose of the barrels was to keep traffic off the old roadway during the resurfacing phase of the project, as well as to protect any laborers working on the road.
None of the experts attributed the accident to the effect of the 2-inch dropoff, which is not considered hazardous by the relevant traffic standards manuals.

LAW
The state Department of Transportation and Development is not a guarantor of the safety of travelers but, rather, owes a duty to keep the highways and road shoulders reasonably safe for non-negligent motorists. Sinitiere v. Lavergne, 391 So.2d 821 (La.1980). Liability based upon negligence is imposed when the Department is actually or constructively aware of a hazardous condition and fails to take corrective action within a reasonable time. Id.
The DOTD's standard of care in an area of highway under construction is not the same as that required on a normal highway not under construction, although there exists a duty on the part of the Department to warn motorists of dangerous construction conditions. Jones v. State, Dept. of Transp. & Develop., 478 So.2d 691 (La.App. 3 Cir.1985), writ den. 480 So.2d 743 (La.1986).
The DOTD has a duty to exercise reasonable care to warn motorists of any dangerous conditions in a construction zone. Golden v. Madden Contracting Co., Inc., 469 So.2d 1039 (La.App. 2 Cir.1985), writ den. 475 So.2d 363 (La.1985). The failure by the DOTD to meet the requirements of its design manual does not constitute negligence per se. Landry v. Fickling, 498 So.2d 167 (La.App. 1 Cir.1986).
Highway construction projects do not create an unreasonable risk of harm to the public as to which principles of strict liability may be applied in the absence of very unusual circumstances. Golden v. Madden Contracting Co., Inc., supra.
In considering asserted negligence a court must employ a duty-risk analysis, which requires examination of whether the defendant's conduct was a cause in fact of the accident, whether the defendant owed a legal duty encompassing the particular risk of harm to which the plaintiff was exposed, whether the defendant breached that duty, and what damages the plaintiff has sustained. Forest v. State, Thru Louisiana D. of Transp., 493 So.2d 563 (La.1986).
In a typical negligence case against the owner of a thing which is actively involved in the causation of injury, the claimant must prove that something about the thing created an unreasonable risk of injury that resulted in the damage, that the owner knew or should have known of that risk, and that the owner nevertheless failed to render the thing safe or to take adequate steps to prevent the damage caused by the thing. In a strict liability case against the same owner, the claimant is relieved only of proving that the owner knew or should have known of the risk involved and the claimant must still prove that under the circumstances the thing presented an unreasonable risk of harm which resulted in the damage. Kent v. Gulf States Utilities Co., 418 So.2d 493 (La.1982).
When the plaintiff uses circumstantial evidence to meet the burden of proving causation by a preponderance of the evidence, the circumstantial evidence, taken as a whole, must exclude other reasonable hypotheses with a fair amount of certainty; this does not mean, however, that it must negate all other possible causes. Carter v. City Parish Government, Etc., 423 So.2d 1080 (La.1982).
*13 The duty to maintain reasonably safe highways and shoulders extends to the protection of those people who may be foreseeably placed in danger by an unreasonably dangerous condition. Sinitiere v. Lavergne, supra. Negligence is actionable only where it is both a cause in fact of the injury and a legal cause of the injury. Id. Legal cause requires a proximate relation, substantial in character, between the actions of the defendant and the harm which occurs. Id.
The state or its political subdivisions has the duty to maintain reasonably safe highways for drivers exercising ordinary care and reasonable prudence, and they cannot be required to maintain the highway in a condition that will be safe for a driver who cannot exercise ordinary care and reasonable prudence. Ryan v. State, 477 So.2d 110 (La.App. 1 Cir.1985), writ den. 478 So.2d 136 (La.1985).
A motorist's duty of reasonable care includes the duty to keep his vehicle under control and the duty to maintain a proper lookout for hazards which, by the use of ordinary care and observation, he should be able to see in time to avoid running into them. Sinitiere v. Lavergne, supra.
Where the cause of an accident was shown to be the motorist's inattentiveness rather than a failure to post any signs warning of a low shoulder which was obvious, the hazard created by paving of a road in connection with an ongoing construction project legitimately designed to improve the highway for the motoring public was not a basis for holding the state liable. Golden v. Madden Contracting Co., Inc., supra.
Motorists are charged with the duty to exercise reasonable care in the operation of their vehicles, which duty encompasses the obligation to maintain proper control of their vehicles and a proper lookout for hazards that one should be able to see by the use of ordinary care and observation. Richardson v. Continental Ins. Co., 468 So.2d 675 (La.App. 3 Cir.1985), writ den. 474 So.2d 1304 (La.1985). In that case the court found that the highway markers were sufficient to give adequate and timely warning of the approaching intersection and that the sole proximate cause of the accident in question was the motorist's inattentive driving at an excessive speed under the prevailing weather conditions.
The DOTD's duty to maintain a safe shoulder does not encompass the foreseeable risk of injury to a motorist who strays completely off his own portion of the highway because his driving ability is impaired by reason of intoxication. Holmes v. State Through Dept. of Highways, 466 So.2d 811 (La.App. 3 Cir.1985), writ den. 472 So.2d 31 (La.1985).
When the primary cause of a collision is a motorist's act of driving his automobile into that part of the roadway reserved exclusively for traffic proceeding from the opposite direction, a prima facie case of negligence is made out; it then becomes incumbent on that motorist to show by clear and convincing evidence that his sudden presence in the opposing lane of traffic was due to unexpected and unforeseen circumstances over which he had no control and that he did not in any particular contribute to the mishap. Cole v. Mississippi River Bridge Authority, 462 So.2d 1314 (La.App. 5 Cir.1985).
Where an accident occurred because of an inattentive and reckless driver, and the warning sign and highway marking at the accident site were not so inadequate as to present a hazardous condition to a careful driver, the DOTD was not liable, either in negligence or in strict liability. Chiasson v. Whitney, 427 So.2d 470 (La.App. 5 Cir. 1983), writ den. 433 So.2d 180 (La.1983).
Causation is a question of fact as to which the trial court's determinations are entitled to great weight and cannot be disturbed absent manifest error. Smith v. State, Through Dept. of Transp., Etc., 412 So.2d 685 (La.App. 2 Cir.1982), writ den. 413 So.2d 907 (La.1982).

*14 APPLICABILITY OF LAW TO FACTS
Applying these principles of law to the facts before us, we find no manifest error in the trial court's decision. It is unnecessary to go further than the threshold step of the duty-risk examination: as the judge stated, the plaintiffs failed to establish by a preponderance of the evidence that the location of the barrel caused the accident.
It is more plausible that Zanca's excessive speed, intoxication, and apparent inattentiveness were the legal cause of the collision. The testimony and photographs in evidence establish that the hazards created by the road construction were well-marked and that an ordinary reasonable driver would have been clearly aware of the hazards of the roadway under construction. Placement of the channelizing barrels further onto the road being resurfaced, or removal of them altogether as suggested by the plaintiffs' experts, could have created other hazards equally as dangerous as the one here encountered.

DECREE
For the foregoing reasons, the judgment of the district court is affirmed. Costs of this appeal are assessed against the appellants.
AFFIRMED.