BOWES, Judge.
Appellant Jerry A. Breaux, Sr. appeals a judgment of the district court dismissing his suit against Eymard Machine Shop, Inc. (hereinafter Eymard Machine) and its insurers, Fireman’s Fund Insurance Company, and St. Paul Fire & Marine Insurance Company. We affirm.
FACTS
Breaux was employed by Eymard & Sons Shipyard, Inc. (hereinafter Eymard Shipyard) as a welder’s helper. On January 11, 1984, Breaux was injured while performing a welding operation on a ship allegedly at the direction of Nolan Vicknair, a part owner, vice president, and superintendent of Eymard Machine. Eymard Machine was a separate company from Eymard Shipyard; Vicknair had no ownership interest in Ey-mard Shipyard, nor did he hold any position there. However, the companies had similar names and were on adjacent properties, and 95% of the business of Eymard Machine came from Eymard Shipyard.
Breaux received worker’s compensation benefits from Eymard Shipyard. However, he filed a tort claim against Vicknair, Ey-mard Machine Shop, and its insurers, claiming that Vicknair negligently instructed him to weld a “padeye” onto the back of a boat, and that, because of the negligent instructions and supervision, he was injured. According to Breaux, he welded one side of the padeye and, at the insistence of Vicknair, did not weld the other side because Vicknair was “in a hurry”. When he pulled on the chainfall attached to the welded material, the padeye loosened and he was hit by the chainfall. Breaux fell, injuring himself.
Breaux voluntarily dismissed Vicknair prior to trial, and trial proceeded only against Eymard Machine and their insurers. Breaux contended that Vicknair had acted within the course and scope of his employment with Eymard Machine, and, therefore, his negligent acts were attributable to Eymard Machine under the doctrine of respondeat superior.
At trial, Breaux testified that he had been employed at Eymard Shipyard for 3 months when, on January 11, 1984, his fellow employee Danny Lightell told him that the two of them had been instructed by shipyard superintendent Raymond Adams to work on the boat in question. He said that Vicknair was already at the site when he arrived, and, according to the plaintiff, Vicknair ordered him to weld the padeye. When Breaux protested that he didn’t know how to do the job and had never done it before (because he was a welder’s helper), he stated that Vicknair ordered him to proceed anyway. When one side of the padeye had been welded, Vick-nair told plaintiff that was good enough because they had to get the job moving.
As a result of the incomplete or inadequate welding, and Breaux’s pulling twice on the chainfall, the accident occurred.
ANALYSIS
Breaux testified that he believed that Vicknair had authority to give him and other shipyard employees orders, and that Vicknair had, in fact, given such orders in the past. Several other witnesses who were shipyard employees also testified that Vicknair had, in the past, given or attempt *842 ed to give them orders, although each eventually realized that Vicknair had no authority to do so. Vicknair denied having given orders to shipyard employees, and specifically and emphatically denied several times having given such instructions to Breaux on the day of the accident.
Following trial, the trial judge dismissed plaintiffs suit, and stated, in part, in his reasons for judgment:
“After considering the evidence presented presented at trial, the depositions, stipulations and memoranda submitted, the Court is of the opinion that plaintiff failed to prove that Mr. Vicknair had the apparent authority to act for his employer, Eymard Machine Shop. Mr. Vicknair's apparent authority had not vested to be enough to hold Eymard Machine Shop responsible for Mr. Vicknair's alleged actions.
“Further, the Court finds that the testimony given by Breaux is inconsistent as well as testimony given by other plaintiff witnesses. The plaintiff has failed to prove that the defendants should be held responsible for his accident and injuries.”
On appeal, Breaux contends that the court erred in applying the law of apparent authority when the law of negligence applies to the facts of the case, that Vicknair had actual authority to issue the negligent orders on behalf of the machine shop, that Vicknair was negligent, and that his negligence was imputable to Eymard Machine. (Remember, Vicknair personally had been voluntarily dismissed by Breaux prior to trial). Because we find that the trial court’s conclusion that negligence was not proven is not manifestly erroneous, we need not reach the question of actual versus apparent authority.
Other than Breaux, two other witnesses, Perry Thibodeaux and Ray Carpenter, were in the general vicinity at the time of the accident. (Danny Lightell did not testify.) Thibodeaux stated that he and Breaux were working on the ship together. Thibo-deaux, a welder, was to gouge or burn off a nut on the propeller shaft. Having done that, he left as Breaux continued to weld the padeye. Thibodeaux stated that he left because the job appeared “unsafe” and that he overheard Vicknair telling Breaux to hurry up and finish the welding. Nevertheless, he (Thibodeaux) expected Breaux to “put more weld” on the padeye — as Thi-bodeaux left, Vicknair and Breaux were standing there and Breaux was welding. Thibodeaux knew that Vicknair had no authority to give him orders, and that the job appeared unsafe to him, so he left the assignment even after Vicknair asked him to continue. He was inside the boat when the accident occurred. Finally, he testified that Vicknair had reported him to his supervisor in order to try to have him fired.
Vicknair testified that, as a part owner of the machine shop, he went daily to the shipyard area to see what work the shipyard needed his shop to do. Because of his 33 years of experience in shipyards, he often saw unsafe practices and reported them to Adams, the supervisor. At the time of the accident, Vicknair stated that he was under the boat with Danny Lightell. He had not personally ordered either Ligh-tell or Breaux to participate in the welding, and gave no instructions whatsoever to Breaux on the day in question. Vicknair was quite emphatic on this point and repeated it several times throughout his testimony.
One other witness, Carpenter, testified by means of a deposition admitted into evidence during the trial. He stated that he and Breaux were working on a job when Vicknair came and asked Breaux to weld the padeye. However, he further stated that he was not in a position to hear whether Vicknair gave any instructions to Breaux during the welding, but only heard the noise of the accident.
We note some important inconsistencies in the testimony of plaintiff’s witnesses. For example, Thibodeaux stated that because Vicknair was rushing the work, the job appeared unsafe to him (presumably, because the welding would not be finished properly). Yet, he gave no warning to Breaux, because he fully expected Breaux to continue welding after he left the scene. It appears that either the job seemed unsafe because it was apparently not going to *843 be completed, or that the actual circumstances indicated that Breaux would be able to continue welding, but not both.
Breaux’s testimony also presents questions as to his veracity. For instance, Breaux stated that until a couple of months before trial (which occurred in March, 1990), that he had to wear a brace or use crutches to walk with 99% of the time; the only time he would jog was in the doctor’s office for observation, or one block to his apartment.
Yet, in February of 1989, Breaux was observed and videotaped (by an investigator) running into his house carrying his crutches. He was observed running on long distances on several occasions with neither braces, corsets, nor crutches. In short, his credibility was successfully put at issue.
Ultimately, the major witnesses as to what Vicknair did or did not tell, instruct, or order Breaux to do immediately prior to the accident were Vicknair and Breaux. Vicknair’s credibility was not challenged, as was Breaux’s. The court resolved the issue of credibility in favor of the defendant. A reading of the trial court’s reasons for judgment reveal that he found Vicknair to be a more believable witness than Breaux. Consistency, both internally within the individual witness’s testimony and externally amongst the witnesses for a party or proposition, is a hallmark of credibility.
In Rosell v. ESCO, 549 So.2d 840 (La.1989), our Supreme Court states:
It is well settled that a court of appeal may not set aside a trial court’s or a jury’s finding of fact in the absence of “manifest error” or unless it is “clearly wrong,” and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable.
* * * The appellate review of fact is not completed by reading only so much of the record as will reveal a reasonable factual basis for the finding in the trial court, but if the trial court or jury findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong. * * * In applying the manifestly erroneous-clearly wrong standard to the findings below, appellate courts must constantly have in mind that their initial review function is not to decide factual issues de novo. * * *
When findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact’s findings; for only the fact-finder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said. * * * Where documents or objective evidence so contradict the witness’s story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness’s story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. * * * But where such factors are not present, and a factfinder’s finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong.
[Citations omitted]
The strong language of Rosell obliges us to conclude that absent the factors discussed therein, the credibility call of the trial judge is final and cannot be disturbed on appeal. Certain statements elicited from Breaux on cross-examination buttress the finding of the court on this issue. The unwavering testimony of Vicknair, combined with the inconsistencies present in the testimony of Breaux (and his witnesses), support the judgment.
*844 In considering asserted negligence a court must employ a duty-risk analysis, which requires examination of whether the defendant’s conduct was a cause in fact of the accident, whether the defendant owed a legal duty encompassing the particular risk of harm to which the plaintiff was exposed, whether the defendant breached that duty, and what damages the plaintiff has sustained.
Alford v. Estate of Zanca, 552 So.2d 7 (La.App. 5 Cir.1989) citing Forest v. State, Thru Louisiana D. of Transp., 493 So.2d 563 (La.1986).
The threshold determination in the present case is whether or not Vicknair’s actions were a cause in fact of Breaux’s accident. Examining the testimony in light of the above jurisprudence, we cannot say that the trial court was clearly wrong in its finding that Breaux did not carry his burden of proving that Vicknair gave any orders or instructions to Breaux as to how to weld the padeye, how much welding was necessary, and when to stop. Breaux admitted that he knew the padeye required more welding. Even considering the testimony of Perry Thibodeaux (whose testimony the trial court discounted as it did Breaux’s), the most that Vicknair did was to tell Breaux to hurry up and complete the job. Accepting, as we are mandated to do, the credibility determinations of the trial court, we must conclude that Vicknair performed no actions which resulted in the accident complained of. His conduct was not a cause in fact of the accident. Rather, it appears that the accident was caused by Breaux having pulled twice on the chain from a padeye which he admittedly knew was not properly welded.
Since plaintiff failed to prove negligence, we find it unnecessary to address the issue of apparent authority. For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are taxed to appellant.
AFFIRMED.