TERRI F. LOVE, Judge.
 

 This appeal arises from a suit on damages resulting from a car accident. The trial court allocated seventy-five percent of the fault for the accident to one of the drivers, who was also a plaintiff, and the remaining twenty-five percent to the State of Louisiana, through the Department of Transportation and Development. We find that the trial court did not commit manifest error in its liability determination or fault allocation and affirm.
 

 FACTUAL BACKGROUND AND PROCEDURAL HISTORY
 

 Danae Jens (“Ms. Jens”) was travelling eastbound on Interstate 12 in St. Tammany Parish in a construction zone on December 21, 1988, when she was involved in an automobile accident with John Jones (“Mr. Jones”), who was driving an 18-wheeler for his employer, Pittman Construction Company (“Pittman”). Ms. Jens alleged that she thought Mr. Jones was encroaching on her lane and she moved to the left. Her vehicle exited the interstate and when she attempted to get back in her lane, Ms. Jens’ vehicle drove into the right lane in the path of the 18-wheeler. Ms. Jens sustained serious injuries as a result of the accident.
 

 |2Ms. Jens, her mother, Patricia Jens (“Mrs. Jens”), and father, Thomas Jens (“Mr. Jens”), (collectively “Plaintiffs”), filed a petition for damages against Mr. Jones; Pittman; Aetna Casualty and Surety Company (“Aetna”), as Pittman’s insurer; Datsun a/k/a Nissan Corporation (“Datsun”); Bill Garrett Nissan, Inc. (“Bill Garrett”); Firestone Tire and Rubber Company, Inc. (“Firestone”); and State of Louisiana, Department of Transportation and Development (“DOTD”). Subsequently, the Plaintiffs filed an amended petition to include Champion Insurance Company (“Champion”) as an additional defendant. Howeyer, Champion later went into receivership, which led the Plaintiffs to substitute the Louisiana Insurance Guaranty Association (“LIGA”) for Champion.
 

 The Plaintiffs filed a motion for a partial dismissal to dismiss their claims against Datsun, Bill Garrett, and Firestone without prejudice. Mr. Jones, Pittman, and Aetna filed a third party demand against Cook Construction Company,
 
 [1]
 
 who was responsible for markings and signage in the road construction area.
 

 LIGA subsequently filed a motion for summary judgment, asserting that there was no evidence that Champion insured the Plaintiffs at the time of the accident. A consent judgment granted LIGA’s motion for summary judgment and dismissed the Plaintiffs’ claims. The Plaintiffs settled and dismissed their claims against Mr. Jones, Pittman, and Aetna. The DOTD filed a cross-claim against Mr. Jones, Pittman, and Aetna seeking indemnity for any alleged liability. Mr. Jones, Pittman, and Aetna filed a motion for summary judgment as to the DOTD’s cross-claim for indemnity. However, the DOTD later dismissed the cross-claim without prejudice. The DOTD file a peremptory exception of prescription, which was 13denied.
 

 
 *135
 
 After a bench trial on the merits, the trial court found in favor of the Plaintiffs and awarded damages as follows:
 

 Ms. Jens
 

 Pain, suffering, and mental anguish $ 800,000
 

 Medical bills $ 120,607.41
 

 Future lost wages $ 142,600
 

 Past lost wages $ 78,621.20
 

 Mr. Jens
 

 Loss of consortium 50,000
 

 Special damages 2,492.48
 

 Mrs. Jens
 

 Loss of consortium_$ 50,000
 

 TOTAL $1,244,321.09
 

 The trial court also allocated seventy-five percent of the fault for the accident to Ms. Jens and twenty-five percent of the fault to the DOTD. The trial court reduced each of the Plaintiffs’ awards by Ms. Jens’ allocation of fault. The DOTD’s timely appeal regarding liability and fault allocation followed.
 

 STANDARD OF REVIEW
 

 Great deference must be given to a trial court’s allocation of fault.
 
 Clarkston v. Louisiana Farm Bureau Cas. Ins. Co.,
 
 07-0158, p. 31 (La.App. 4 Cir. 7/2/08), 989 So.2d 164, 186. After weighing evidence and testimony, the factfinder finds an acceptable range of liability.
 
 Id.
 
 An allocation of fault within that reasonable range cannot be clearly wrong, as it is not an “exact science.”
 
 Id.
 

 The trial court, as the factfinder in a bench trial, considers “the nature of each party’s wrongful conduct and the extent of the causal relationship between that conduct and the damages claimed.”
 
 Id.
 
 Fault allocated by the trial court will not be altered by the appellate courts absent evidence that it was “clearly wrong or manifestly erroneous.”
 
 Adams v. Rhodia, Inc.,
 
 07-2110, p. 15 (La.5/21/08), 983 So.2d 798, 809. “Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder’s, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony.”
 
 Cormier v. Comeaux,
 
 98-2378, p. 5 (La.7/7/99), 748 So.2d 1123, 1127.
 

 LIABILITY
 

 The DOTD asserts that the roadway construction was not the proximate cause of the accident because both drivers were driving in excess of the 45 mph speed limit.
 

 In order to prove that the DOTD was negligent, the Plaintiffs must prove that:
 

 (1) DOTD had custody of the thing that caused the plaintiffs injuries or damages;
 

 (2) the thing was defective because it had a condition that created an unreasonable risk of harm;
 

 (3) DOTD had actual or constructive knowledge of the defect and failed to take corrective measures within a reasonable time; and
 

 (4) the defect in the thing was a cause-in-fact of the plaintiffs injuries.
 

 Netecke v. State ex rel. DOTD,
 
 98-1182, p. 7 (La.10/19/99), 747 So.2d 489, 494. However, because the accident occurred in 1988, the Plaintiffs do not have to prove the third prong regarding knowledge.
 
 Dupree v. City of New Orleans,
 
 99-3651 (La.8/31/00), 765 So.2d 1002.
 
 [2]
 
 The DOTD is not responsible for every accident on state highways.
 
 Bush v. State, Dep’t of Transp. & Dev.,
 
 542 So.2d 721, 723 (La.App. 4th Cir.1989). However, the highways must be kept in a reasonably safe
 
 *136
 
 condition.
 
 Id.
 
 This duty is non-delegable.
 
 Roberts v. State, Dep’t of Transp. & Dev.,
 
 576 So.2d 85, 88 (La.App. 2nd 1991). The duty extends “also to motorists who are slightly exceeding the speed limit or momentarily inattentive.”
 
 Rosen v. State, Dep’t of Transp. & Dev.,
 
 01-0499, p. 11 (La.App. 4 Cir. 1/30/02), 809 So.2d 498, 507.
 

 “The DOTD’s standard of care in an area of highway under construction is not the same as that required on a normal highway not under construction.”
 
 Alford v. Estate of Zanca,
 
 552 So.2d 7, 12 (La.App. 5th Cir.1989). The DOTD has a duty to warn motorists of construction conditions in a manner that alerts the “ordinary, reasonable motorist, having in view the probable traffic, the character of the road, and the use reasonably to be anticipated.”
 
 Hardenstein v. Cook Const., Inc.,
 
 96-0829, p. 9 (La.App. 1 Cir. 2/14/97), 691 So.2d 177, 183-184.
 

 Ms. Jens testified that she was attempting to pass Mr. Jones and she went off the edge of the road when she thought Mr. Jones was encroaching on her lane. She stated that when she tried to get back on the road, her steering wheel jerked in the path of Mr. Jones. Ms. Jens testified that she had been looking for edge lines and trying to watch the lane’s edge.
 

 Robert Canfield (“Mr. Canfield”), the Plaintiffs’ traffic engineering expert, testified regarding the overlay project in which Ms. Jens was driving. He stated that the pavement on the interstate at the time of the accident on December 21 was the same pavement from October. He testified that the center lines on the interstate were not in compliance with the standards of the
 
 Manual on Uniform Traffic Control Devices
 
 (“MUTCD”).
 
 [3]
 
 Mr. Canfield stated that the lines were crooked; the lines were too far apart, and too short. He further testified that these | (¡inconsistencies would make the drivers perceive that the lanes were shifting. Edge lane lines, which were not in place, should have been in place by mid-November. Further, Mr. Canfield testified as to a series of letters indicating that the DOTD knew the striping on the interstate was inadequate and deficient.
 

 Franklin Griffith (“Mr. Griffith”), the Plaintiffs’ expert in accident reconstruction and highway engineering, testified that edge lane lines should have been in place on the interstate. He stated that the drop off from the lane was between four to six inches. Mr. Griffith also testified that Ms. Jens could have been driving sixty to sixty-five miles per hour.
 

 Ray Burkhardt (“Mr. Burkhardt”), the Plaintiffs’ expert in accident reconstruction, testified that Ms. Jens probably thought Mr. Jones was crossing the center line. He stated that construction had ceased for such a long period of time, it had become a regulatory site and that most drivers would drive the normal speed due to the confusion. Further, he testified that the lack of proper striping created differing driver perceptions. The primary cause of the accident, according to Mr. Burkhardt, was the lack of visual cues.
 

 Jeffrey Milburn (“Mr. Milburn”), an engineer for the defense, testified that the cause of the accident was Ms. Jens’ driving reactions, coupled with her speed, and Mr. Jones’ speed. Mr. Milburn estimated Ms. Jens’ speed at around seventy-five miles per hour and Mr. Jones’ at sixty miles per hour. As opposed to Mr. Griffith’s testimony, he stated that the drop off was around two inches or flush and would have made no difference when driving off the edge of the interstate. Mr. Milburn also
 
 *137
 
 alleged that edge lane lines would not have made a difference. However, on cross-examination, he agreed that spacing and length of the center lines were in violation of MUTCD.
 

 |7As to the first prong, it is undisputed that the DOTD had custody of the interstate upon which the accident occurred. As to a defect that caused an unreasonable risk of harm, the trial court concluded that the portion of the interstate on which Ms. Jens was driving was inadequately striped. In fact, the record revealed that the striping, notably the centerline, was not in compliance with temporary or permanent requirements. The existence of lane striping is to maintain traffic flow in the proper lane and direction. However, Ms. Jens testified that she perceived that Mr. Jones was encroaching on her lane. Mr. Can-field and Mr. Burkhardt testified that the lack of proper striping could alter drivers’ perceptions, which would cause drivers to think the person in the parallel lane was encroaching on their own. Furthermore, the trial court made the factual finding that the “inadequate or lack of striping” was a “contributing factor” in causing the accident. Given Ms. Jens’ testimony regarding her perception of Mr. Jones’ truck encroaching on her lane, and the expert testimony regarding the inadequate striping on the interstate, which caused her to turn her wheel to the left and leave the unmarked edge of the interstate, we cannot say that the trial court committed manifest error in the factual finding that the inadequate striping and Ms. Jens’ accelerated rate of speed caused the accident.
 

 FAULT ALLOCATION
 

 The Louisiana Supreme Court enumerated factors utilized in apportioning fault:
 

 (1) whether the conduct resulted from inadvertence or involved an awareness of the danger,
 

 (2) how great a risk was created by the conduct,
 

 (3) the significance of what was sought by the conduct,
 

 (4) the capacities of the actor, whether superior or inferior, and,
 

 | r(5) any extenuating circumstances which might require the actor to proceed in haste without proper thought.
 

 Watson v. State Farm Fire and Cas. Ins. Co.,
 
 469 So.2d 967, 974 (La.1985). The “relationship between the fault/negligent conduct and the harm to the plaintiff are considerations in determining the relative fault of the parties.”
 
 Id.
 
 Additionally, “[t]he fact that a motorist involved in an accident was speeding or intoxicated does not in and of itself require a finding of liability.”
 
 Bland v. Interstate Fire & Cas. Co.,
 
 311 So.2d 480, 482 (La.App. 4th 1975).
 

 The DOTD maintains that the trial court erred in assessing it twenty-five percent of the fault for causing the accident. As noted above, we found no clear error in the trial court’s finding of the DOTD’s liability. In regards to the
 
 Watson
 
 factors and as established at trial, the DOTD was aware of the inadequate striping on the interstate, which violated the DOTD’s duty to Ms. Jens and created a risk that drivers would be unsure as to their lane restrictions. The DOTD was in the best position to remedy the striping to ensure that drivers could safely traverse the roadway and be able to properly discern their lane and its direction. Finally, the record reveals no extenuating circumstances that prevented the DOTD from ensuring that the proper striping was placed on the interstate.
 

 The record revealed that Mr. Jones was exceeding the posted speed limit at the
 
 *138
 
 time of the accident. However, he began to decelerate when he saw Ms. Jens’ begin to veer off the interstate. The record lacks any evidence of the negligence of Mr. Jones apart from excessive speed. As speed is not in and of itself sufficient to maintain a finding of liability, we do not find that the trial court erred by not finding Mr. Jones liable for the accident. Therefore, given the DOTD’s liability factored in with Ms. Jens’ speed, we find that it was reasonable for the trial court |9to conclude that the DOTD was twenty-five percent at fault for causing the accident
 

 DECREE
 

 For the above mentioned reasons, we find that the trial court did not commit manifest error in allocating twenty-five percent fault of the accident to the DOTD and affirm.
 

 AFFIRMED.
 

 [1]
 

 . The trial transcript indicates that Cook Construction Company later filed for Chapter 7 bankruptcy and was dismissed.
 

 [2]
 

 . Even if the Plaintiffs are required to prove that the DOTD had actual or constructive knowledge, the letters in the record reflect that the DOTD knew that the striping was inadequate and in violation of MUTCD.
 

 [3]
 

 .
 
 Donavan v. Jones,
 
 26883, p. 12 (La.App. 2 Cir. 6/21/95), 658 So.2d 755, 763, held that the DOTD is “legally required to follow the MUTCD.”